EASY LIVING, INC., F.D.B.A. MAIN STREET U.S.A., INC.,
APPELLEE, *v.* WHITEHEAD ET AL., APPELLANTS.■

[Cite as Easy Living v. Whitehead (1979),
65 Ohio App. 2d 206.]

(No. C-780286—Decided August 8, 1979.)

*Messrs. Shane & Rebel* and *Mr. Steven C. Shane,* for appellee.

*Mr. R. Gregory Park* and *Mr. Stephen H. Olden,* for appellants.

*Per Curiam.* On March 3, 1975, defendant-appellant Linda Whitehead entered into a retail installment sales contract with plaintiff-appellee, Easy Living, Inc., for the purchase of a bar stereo. (The contract was also signed by defendant-appellant Michael Toney. Because the main party in interest was Whitehead, when speaking of appellants, we will hereafter refer only to Whitehead.) This purchase was financed by Easy Living, the total amount owed being $958.32, of which $783.90 was the price of the merchandise. Whitehead defaulted after paying $685.58, and Easy Living sued in the Hamilton County Municipal Court for the balance then owing on the contract. Whitehead counterclaimed, alleging violations of the Truth in Lending Act (82 U. S. Statutes 146, P.L. 90-321, Title I; Section 1601 *et seq.,* Title 15, U. S. Code). Judgment was entered for Easy Living, and Whitehead timely filed her notice of appeal.

In her single assignment of error, Whitehead asserts that the trial court erred in ruling that Easy Living had not violated the Truth in Lending Act. We agree. Whitehead has pointed out two violations of this Act. The first occurred when Easy Living described the security interest covered by the contract in the following terms: "Seller retains a purchase money security interest, pursuant to terms on reverse in any goods described above together with all attachments, equipment, parts, and replacements until the Total of Payments is paid in full." The goods described were the bar stereo and a three piece living room set bought under a previous contract. Only $12.25 remained to be paid on the living room set.

The contract provision just quoted indicates that Easy Living would retain a security interest in both the bar stereo and the living room set until the contract price was paid in full. This is not in accordance with R. C. 1317.071 which limits the security interest which can be taken as follows:

"No retail seller, in connection with a retail installment contract arising out of a consumer transaction, shall take any security interest other than as authorized by this section.

"* * *

"A seller may secure the debt arising from the sale by contracting for a security interest in other property if, as a result

of a prior sale, the seller has an existing security interest in the other property, and he may contract for a security interest in the property sold in the subsequent sale as security for the previous debt. If debts arising from two or more sales are thus secured or are consolidated into one debt payable on a single schedule of payments, and the debt is secured by security interests taken with respect to one or more of the sales, payments received by the seller after the taking of security interests in the other property or the consolidation are deemed, for the purpose of determining the amount of the debt secured by the various security interests, to have been first applied to the payment of the debts arising from the sales first made. To the extent debts are paid according to this section, security interests in items of property terminate as the debt originally incurred with respect to each item is paid."

This section is clearly meant to cover precisely this situation where goods sold under a previous contract are added security for a subsequent contract. The effect of this statute is to release the goods from the previous contract as soon as the amount outstanding on that contract is paid. Here, since Whitehead's monthly installment payments were $39.93 each, the $12.25 balance from the prior contract was paid off with the first payment, and at that point the living room set could no longer lawfully be security.

The regulations implementing the Truth in Lending Act are found in Regulation Z, Part 226, Title 12, C.F.R. Section 226.8(b)(5) of Part 226 requires a creditor, in a transaction other than open end, to disclose: "[a] description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates***."

While we have not found a case interpreting this regulation in a situation similar to ours, it seems clear that this regulation requires that "***[t]he description of that security interest should accurately reflect the type of security interest that may be legally acquired under the appropriate State law." FRB Staff Opinion Letter, 1974-1977 Transfer Binder, CCH Consumer Credit Guide, paragraph No. 31,151 (1974). A description, such as the one Easy Living used, which purports to retain a security interest more inclusive than that allowed by

state law is a violation of Section 226.8(b)(5), Title 12, C.F.R. FRB Staff Opinion Letter, 1974-1977 Transfer Binder, CCH Consumer Credit Guide, paragraph No. 31,581 (1977). See *Pollock* v. *General Finance Corp.* (C.A. 5, 1976), 535 F. 2d 295, petition for rehearing denied (C.A. 5, 1977), 552 F. 2d 1142, certiorari denied (1977), 434 U. S. 891; *Jones* v. *Allied Loans* (D. S.C. 1977), 447 F. Supp. 1121. Contra *Pinkett* v. *Credithrift of America* (N.D. Ga. 1977), 430 F. Supp. 113.

The second violation of the Truth in Lending Act was the failure to disclose the components of the finance charge. The pertinent regulation at the time the contract was signed required disclosure of "[t]he total amount of the finance charge, with description of each amount included, using the term 'finance charge.' " Section 226.8(c)(8)(i), Title 12, C.F.R. Whitehead's contract states only that the finance charge is $168.32. This finance charge consisted of $154.28 in interest and a $14.04 service charge. Directly below the finance charge on the contract is an item indicating an annual percentage rate of 19.53 percent. The logical assumption is that the finance charge consists only of this interest. The $14.04 service charge was never disclosed.

The Congressional purpose in enacting the Truth in Lending Act is set forth in Section 1601(a), Title 15, U. S. Code, as follows:

"The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."

One of the best ways of comparing credit terms is through comparison of interest rates. However, comparison of interest rates is meaningless if the finance charge includes more than interest. As a result, the regulation (Section 226.8[c][8][i] ) was promulgated requiring that the components of the finance charge be disclosed.

Easy Living argues that the regulation only requires disclosure of the finance charge as a single figure, and further, that the regulation is confusing. Easy Living does not offer any explanation of what the language, "each amount included," in the regulation could possibly mean if it does not refer to the components of the finance charge.

R. C. 1317.06 provides for different methods for computing the base finance charge and the service charge, both of which are included in the finance charge. Logically, these are therefore separate "amounts" required to be separately disclosed. See *Barber* v. *Kimbrell's* (W. D. N.C. 1976), 424 F. Supp. 42, modified on other grounds (C.A. 4, 1978), 577 F. 2d 216, certiorari denied (1978), 99 S. Ct. 329; *Johnson* v. *Associates Finance* (S.D. Ill. 1974), 369 F. Supp. 1121 (involving a loan transaction, but the pertinent regulation is identical); but see *Belton* v. *Columbus Finance & Thrift Co.* (Ga. App. 1972), 1969-1973 Transfer Binder, CCH Consumer Credit Guide, paragraph No. 99,101. Since Easy Living did not adequately describe the security interest and did not disclose the components of the finance charge, it violated the Truth in Lending Act. The assignment of error is sustained.

Easy Living asserts in a "cross-assignment of error" that the trial court erred in failing to decide that Whitehead's Truth in Lending claims were barred by the time requirements of the Act. Although this issue was raised below, the trial court did not rule on it; but, having determined that Easy Living had not violated the Truth in Lending Act, the court did not consider whether Whitehead was barred from alleging these violations. Appellee is entitled to put forth any argument in support of the trial court's judgment which was advanced below. Accordingly, we consider this "cross-assignment."

The relevant portions of the Truth in Lending Act read as follows:

"(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person***
"***

"(2) (A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transac-

tion,\*\*\*except that the liability under this subparagraph shall not be less than \$100 nor greater than \$1,000;\*\*\*

"\*\*\*

"(e)  Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

"\*\*\*

"(h)  A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) of this section against any amount owing to such creditor by such person, unless the amount of the creditor's liability to such person has been determined by judgment of a court of competent jurisdiction in an action to which such person was a party." Section 1640, Title 15, U. S. Code.

The contract was signed on March 3, 1975. Easy Living filed its complaint in this case on October 12, 1977, claiming the balance due on the contract. Whitehead answered and counterclaimed, alleging violations of the Truth in Lending Act. Although Whitehead originally asked for \$336.64 (twice the finance charge), at trial she sought only to reduce the amount of Easy Living's claim and did not ask for any damages in excess of that claim.

Clearly Whitehead would have been barred by Section 1640(e), Title 15, U. S. Code, from filing a suit in 1977 alleging violations of the Act. However, it is not so clear that she is barred from raising these as defenses when she is sued. Courts have differed in their conclusions on this question.

We read Section 1640(h), Title 15, U. S. Code, as limiting only the right of a person to *offset* any claims against him. According to Black's Law Dictionary (Rev. 4 Ed., 1968), at page 1237, the more usual form of "offset" is "set-off." This dictionary also contains the following definitions:

"Set-off.  A counter demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action.\*\*\*" *Id.*, at page 1538.

"Recoupment. In practice. Defalcation or discount from a demand.\*\*\* A right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the

plaintiff has not complied with the crossobligations or independent covenants arising under the same contract.* * *
" * * *

" 'Recoupment' differs from 'set-off' in this respect: that any claim or demand the defendant may have against the plaintiff may be used as a set-off, while it is not a subject for recoupment unless it grows out of the very same transaction which furnishes the plaintiff's cause of action.* * *" *Id.*, at pages 1439 to 1440.

In the case *sub judice*, Whitehead's Truth in Lending claims arose from the same contract on which Easy Living's suit was based.

The case of *Hodges v. Community Loan and Investment Corp.* (1974), 133 Ga. App. 336, 344, 210 S.E. 2d 826, 832, modified on other grounds (1975), 234 Ga. 427, 216 S.E. 2d 274, held as follows:

"* * * Although the [Truth in Lending] claim arose contemporaneously with the execution of the contract, it is not a product of a breach of any obligation or covenant therein; nor is it related either to the subject matter of the contract or the plaintiff's suit. On the contrary, the borrowers' claim for recovery of a penalty created by federal law is an extrinsic by-product of this transaction and is not dependent upon the lender's contractual obligations. It has no relationship to an infringement of the mutual obligations and stipulations of the transaction. In short, it is not a defense which goes to the justice of the lender's claim but an affirmative action which demands a penalty for an independent wrong. Accordingly, borrowers' counterclaim is in the nature of set-off, not recoupment.* * *"

We are not, however, persuaded by this reasoning. Both claims arose out of the same contract. Easy Living sued to recover a debt owing on the contract, and Whitehead is alleging the illegality of certain terms of the contract. To be a recoupment the defendant's claim need not be of the same form nor controlled by the same body of law as the plaintiff's. Comments, Truth in Lending and the Statute of Limitations, 21 Vill. L. Rev. 904. Since Whitehead's defense arose out of the same transaction as the claim against her and since she claimed damages no larger than the claim against her, her defense was in the nature of a recoupment rather than a set-off, and Section 1640(h), Title 15, U. S. Code, is not applicable.

This section was intended to prohibit debtors from unilaterally deducting, from the amount they owe, the civil penalty resulting from the Truth in Lending Act violations. *Lincoln First Bank of Rochester* v. *Rupert* (1977), 60 N.Y. App. Div. 2d 193, 400 N.Y. Supp. 2d 618; *Stephens* v. *Household Finance Corp.* (Okla. 1977), 566 P. 2d 1163; Comments, *supra,* 21 Vill. L. Rev. 904, at page 924, fn. 121, and at page 925.

It is well established that recoupment, when used only to defeat a plaintiff's claim, is not barred by the statute of limitations, if the main action is timely brought. 3 Moore's Federal Practice, page 13-245, paragraph 13.11 (1972); Wright, Law of Federal Courts (2 Ed., 1970) 344, 350, Section 79; *Bull* v. *United States* (1935), 295 U. S. 247. As a result, the one year limit on actions in Section 1640(e), Title 15, U. S. Code, does not act to bar Whitehead's Truth in Lending defenses. *Continental Acceptance Corp.* v. *Rivera* (1976), 50 Ohio App. 2d 338, certiorari denied (1977), 434 U. S. 857; *Household Finance Corp.* v. *Yeager* (Stark Co. Ct. of Appeals No. C.A.-4923, December 28, 1978), unreported; *Akron National Bank & Trust Co.* v. *Roundtree* (1978), 10 Ohio Opinions 3d 355; *Household Finance Corp.* v. *Hobbs* (Del. Superior Ct. 1978), 387 A. 2d 198; *Wood Acceptance Co.* v. *King* (1974), 18 Ill. App. 3d 149, 309 N.E. 2d 403.

Easy Living contends that Section 1640(e) is a statute of prescription, not one of limitation, and therefore even the defense of recoupment is barred if the plaintiff-creditor sues more than one year after the alleged Truth in Lending violation occurred. A statute of prescription is generally found in a statute creating a new right unknown at common law. The time limitation for enforcement of this right becomes a part of the right and, therefore, limits the right as well as the remedy. Once the time limit has passed, the right is extinguished. 51 American Jurisprudence 2d 599, 600, Limitation of Actions, Section 15. As a result, the time limitation is substantive and not merely procedural.

There is authority which applies this reasoning to Section 1640(e). *Fenton* v. *Citizens Savings Assn.* (C.D. Mo. 1975), 400 F. Supp. 874. However, the United States Supreme Court has cast doubt on whether such analysis can still be validly used. "***Classification of such a provision as 'substantive' rather than 'procedural' does not determine whether or under what

214

circumstances the limitation period may be extended.\*\*\*"
*Burnett* v. *New York Central Rd. Co.* (1965), 380 U. S. 424, at
pages 426 to 427. This case indicates that the more ap-
propriate analysis concentrates on the purposes of the Act, the
limitation provision and the remedial scheme.

The purpose of the Truth in Lending Act, as set forth in
Section 1601, Title 15, U. S. Code, is to allow the consumer to
more accurately shop for credit and to protect the consumer
against unfair and inaccurate credit practices. Thus, the
primary emphasis in the Act is on consumer protection. Sec-
tion 1640(e) evinces a Congressional intent to avoid stale
debtor claims. However, it would be patently unfair to bar a
debtor from raising defenses which reflect the unfairness of
the transaction, simply because the contract was over one year
old when the creditor sued thereon. Fraud and misrepresenta-
tion are always valid defenses to a suit on a contract. Typically
a debtor is not aware of the flaws in his contract until he sees a
lawyer after he has been sued. Allowing the debtor to raise
such defenses creates no difficulty with preservation of
evidence. Creditors preserve contracts in order to sue thereon
in case of a default. Truth in Lending violations are evidenced
by these same contracts. The primary method of enforcement
of the required disclosures is the civil remedy of Section 1640.
*Lincoln First Bank of Rochester* v. *Rupert, supra.* But see
*Ken-Lu Enterprises* v. *Neal* (1976), 29 N.C. App. 78, 223 S.E.
2d 831, certiorari denied (1976), 429 U. S. 1002; *Shannon* v.
*Carter* (1978), 282 Ore. 449, 579 P. 2d 1288, certiorari denied
(1979), 99 S. Ct. 873. The purpose of the Act and its provisions
indicate that Whitehead's claims were not time-barred. The
"cross-assignment of error" is overruled.

It is the order of this court that the judgment or final order
herein appealed from be, and the same hereby is, reversed and
final judgment entered for appellants in accordance with App.
R. 12(B).

*Judgment reversed.*

SHANNON, P. J., PALMER and BETTMAN, JJ., concur.