Charles **PEARSON, et al., Plaintiffs,**

v.

**EASY LIVING, INC., Defendant.**

**No. C–1–80–264.**

United States District Court,
S. D. Ohio, W. D.

July 14, 1981.

17. 15 U.S.C. § 78r(c).

Alphonse A. Gerhardstein, Cincinnati, Ohio, for plaintiffs.

John A. Rebel, Cincinnati, Ohio, for defendant.

## MEMORANDUM

HOGAN, Senior District Judge.

This is a Truth-in-Lending Act (hereinafter TILA) case filed by the plaintiffs pursuant to 15 U.S.C. § 1640. There are several legal issues to be resolved concerning whether Easy Living, Inc. (hereinafter Easy Living or defendant) violated the disclosure requirements of TILA and 12 C.F.R. § 226 (hereinafter Regulation Z). The case is before us on cross-motions for summary judgment.[1]

### I.

On May 18, 1979, plaintiffs Charles and Lena Pearson entered a contract with Easy Living. This contract served the dual purpose of refinancing a loan for furniture previously purchased from Easy Living and extending credit for some additional merchandise. The new merchandise included an electric range, a freezer and a folding rocking chair. The items being refinanced were a washer, a dryer, box springs and a mattress. The carryover balance from the previous contract was $688.77. The price of the new items was $731.50. Joint credit life insurance was purchased, as was property insurance, totalling $150.71. The total amount financed was $1,570.98. The finance charge was $269.10. The annual rate of interest was 17.25%.

On November 9, 1979, Charles Pearson entered another contract with Easy Living. This agreement was strictly a refinancing arrangement. Several items totalling $3,868.21 were refinanced. Insurance increased the amount financed to $4,374.81. The finance charge was $660.87 with an annual rate of interest of 15.63%.

On May 16, 1980, the plaintiffs filed this action alleging that the agreements of May 18, 1979 and November 9, 1979 failed to comply with the disclosure requirements of TILA and Regulation Z. The complaint outlined five violations in each contract.[2] After filing its answer, Easy Living filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).[3] In addition to opposing this motion, the plaintiffs filed a motion for summary judgment. In responding to that motion, Easy Living raised many of the issues before us today. As stated previously, we treat these motions as cross-motions for summary judgment.

### II.

### A.

Summary judgment is authorized by Fed.R.Civ.P. 56(c) where the movant

---

1. While defendant's motion is captioned a motion to dismiss, items outside the pleadings have been submitted in support of it and, therefore, this Court will view it as a motion for summary judgment. See Fed.R.Civ.P. 12(c).

2. The Pearsons allege identical violations in each contract:
 a) failure to clearly and conspicuously disclose the amount financed,
 b) failure to clearly and conspicuously disclose the deferred payment price,
 c) failure to itemize the finance charge,
 d) failure to disclose all required information on the same side of the page, and
 e) failure to properly disclose and identify a security interest retained by Easy Living.

3. Easy Living sought to dismiss only claims a, b, c, and d. However, in its later memoranda, the defendant asserts reasons to find against the plaintiffs on claim e. We, therefore, shall address all five claims.

shows conclusively that no genuine issue of fact exists and the evidence with all the inferences drawn therefrom must be read in the light most favorable to the nonmoving party. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.) cert. dism'd., 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). The objective of Rule 56 is to separate the sham and insubstantial from the real and genuine issues by allowing the trial court to pierce the allegations of the pleadings and dispose of a case in advance of a hearing on the merits when no genuine issues of fact exist. *Bryant v. Kentucky,* 490 F.2d 1273 (6th Cir. 1974). Summary judgments are granted with extreme caution for they deny the parties their day in court. *Smith v. Hudson,* id. Because of the nature of their records, TILA cases are particularly susceptible to summary disposition, however. *See,* e.g., *Rudisell v. Fifth Third Bank,* 622 F.2d 243 (6th Cir. 1980); *Smith v. Chapman,* 614 F.2d 968 (5th Cir. 1980). Since we find at least one of the plaintiffs' claims to be meritorious, we grant the plaintiffs' motion for summary judgment.

### B.

There are a host of issues to be addressed in this case. The crucial issues relate to whether Easy Living violated TILA and potential defenses to such violation. Easy Living has, however, raised a plethora of tangential defenses and issues. We shall attempt to combine our discussion of related issues where possible. The pertinent issues in this case are as follows:

1) Is this action justiciable under Article III of the United States Constitution; in other words, do the plaintiffs have standing to bring this action, and does the action relate to an administrative question as opposed to a judicial question? (Justiciability also encompasses the concept of mootness, but that will be addressed more efficiently in the second issue.)

2) What is the effect of the consent judgment in *Tomes v. Easy Living, Inc.,* No. A8001572 (C.P.Ct., Hamilton Co.), a class action (plaintiffs were class members) enjoining Easy Living from taking a security interest in goods under a refinancing contract where state law limits such a security interest; vis-a-vis, does that consent decree moot the instant case or have a res judicata effect and, therefore, bar this action?

3) Is the November 9, 1979 transaction a credit sale or non-sale credit?

4) Does a parenthetical notation under amount financed showing (5 + 6 + 7e) where there are no lines 6 and 7e disclose the amount financed clearly and conspicuously in a meaningful sequence?

5) Does a parenthetical notation under deferred payment price showing (3 + 6 + 7e + 9) where there are no lines 6 and 7e violate TILA by failing to disclose the deferred payment price clearly and conspicuously in a meaningful sequence?

6) Does the failure to disclose the base finance charge and the service charge as components of the finance charge violate TILA?

7) Does the inclusion of the itemization of the finance charge on a separate page violate TILA?

8) Does the failure to limit in the disclosure the security interest retained in refinanced goods only to items which are not paid off in sequential order violate TILA?

9) Is the plaintiff precluded from bringing this action by laches or waiver?

10) Is any violation of the statute by Easy Living protected by the statutory affirmative defense of

a) correction under 15 U.S.C. § 1640(b),

b) bona fide error under 15 U.S.C. § 1640(c), or

c) good faith conformity with official interpretation under 15 U.S.C. § 1640(f).

11) To what recovery are the plaintiffs entitled; specifically, should attorney fees be granted in this case?

### C.

█ TILA has the broad purpose of promoting the informed use of credit by consumers by assuring the meaningful disclosure of credit terms to them. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); also *Anderson Brothers Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). Because credit transactions defy exhaustive regulation by statute, expansive authority was delegated to the Federal Reserve Board (hereinafter FRB). In response, the FRB promulgated Regulation Z, 12 C.F.R. § 226 et seq., which provides a more complete outline of disclosure requirements. TILA is a remedial statute and should be given a broad, liberal construction so as to serve its purpose. *See Flesher v. Household Finance Corp.*, 640 F.2d 861 (6th Cir. 1981); *McGowan v. King, Inc.*, 569 F.2d 845 (5th Cir. 1978), but it is important for courts to protect the consumer from "informational overload." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); *James v. Ford Motor Credit Co.*, 638 F.2d 147 (1980); see also *Anderson Brothers Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981).

█ The standard of liability under TILA does not require that the failure to disclose or the garbled disclosure deceive the consumer. *See McGowan v. King, Inc.*, 569 F.2d 845 (5th Cir. 1978). TILA uses an objective standard and no actual deception need be shown. *Smith v. Chapman*, 614 F.2d 968 (5th Cir. 1980); *Charles v. Krauss Co.*, 572 F.2d 544 (5th Cir. 1978). It is not sufficient for a lender to comply with the spirit of TILA; strict compliance with the disclosure requirement is necessary. *Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407 (7th Cir. 1980). The concept is that TILA deters socially undesirable lending practices, see *Murphy v. Household Finance Corp.*, 560 F.2d 206 (6th Cir. 1977), by allowing consumers who are aware of the requirements and true terms to act where such terms are not clearly and conspicuously disclosed. *Smith v. Chapman*, 614 F.2d 968 (5th Cir. 1980). Once a violation is found, liability is imposed, absent a statutory defense. *Charles v. Krauss Co.*, 572 F.2d 544 (5th Cir. 1978). With these general principles in mind, we proceed to the issues before us.

### III.

The first issue before us is whether the case is justiciable under Article III of the United States Constitution. The defendant raises these arguments as to why this is not a justiciable controversy:

1) The plaintiffs do not have standing,

2) The question here is administrative in nature, and

3) The issue here is moot.

█ The defendant's first contention is that plaintiffs cannot show sufficient injury to themselves to satisfy the constitutional and prudential rules of standing. The standing concept assures federal courts that the controversy will be presented in an adversary context and that the party seeking relief has a personal stake in the outcome. *See Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). This requirement is two-pronged, exercising both constitutional and prudential limitations on the exercise of federal judiciary power. *Gladstone Realtors v. Billwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). Article III case or controversy language requires that the plaintiffs must show that they suffered some actual or threatened injury, and the prudential limitation on jurisdiction requires injury peculiar to one's self. See *id.*; also *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

Congress may, by legislation, expand standing to the full extent permitted by Article III, thus permitting litigation by one "who otherwise would be barred by prudential standing rules." *Warth v. Seldin, supra*, at 501, 95 S.Ct. at 2206. In no event, however, may Congress abrogate

the Article III minima: A plaintiff must always have suffered "a distinct and palpable injury to himself" *ibid.*, that is likely to be redressed if the requested relief is granted. *Simon v. Eastern Kentucky Welfare Rights Organization, supra,* at 38, 96 S.Ct. at 1924.

*Gladstone,* 441 U.S. at 100, 99 S.Ct. at 1608.

 There is no question that 15 U.S.C. § 1640 removes the limitations imposed by prudential concepts of standing. The issue is limited to whether Congress can confer standing upon a person who cannot establish injury to himself. That Congress has legislated standing is no longer in doubt. See *Sierra Club v. Morton,* 405 U.S. 727 n. 3, 92 S.Ct. 1361 n. 3, 31 L.Ed.2d 636 (1972); 15 U.S.C. § 57a(e)(1)(A) (FTC rulemaking); 15 U.S.C. § 2073 (Endangered Species Act); 16 U.S.C. § 154 (Fed. Water Pollution Control Act Amendments of 1972); 33 U.S.C. § 1365(a)(9) (Marine Protection, Research and Sanctuaries Act); 42 U.S.C. § 1857h–2 (Clean Air Act Amendments of 1970); 42 U.S.C. § 4911 (Noise Control Act); cf. *Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976). Apparently, the theory behind such statutes is that Congress cannot expand Article III, but it can create the injury necessary to fit within Article III. See *White v. Arlen Realty & Development Corp.,* 540 F.2d 645 (4th Cir. 1975). This rationale applies to TILA, and, therefore, standing is conferred on the instant plaintiffs. See *id.*

 Easy Living also contends that the issue in this case is an "administrative question" and is not within this Court's Article III powers, citing *Federal Radio Commission v. Nelson Brothers Bond and Mortgage Co.,* 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166 (1933) and *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 S.Ct. 22 (1980). While there is a body of law stating that Article III courts are not policy-making bodies and cannot decide administrative questions, see *Federal Radio Commission v. General Electric Co.,* 281 U.S. 464, 50 S.Ct. 389, 74 L.Ed. 969 (1930); *Postum Cereal Co. v. California Fig Nut*

*Co.,* 272 U.S. 693, 47 S.Ct. 284, 71 L.Ed. 478 (1927); *Keller v. Potomac Electric Power Co.,* 261 U.S. 428, 43 S.Ct. 445, 67 L.Ed. 731 (1923), these cases are well outside the realm of the instant case. The substance of what TILA and Regulation Z require is not an administrative question, but is classic statutory and regulatory interpretation. The defendant misreads *Milhollin.* The *Milhollin* Court does not preclude interpretation of TILA, nor does it determine that TILA issues are administrative questions. Rather, the *Milhollin* decision merely serves as a signal to federal courts not to read requirements into TILA which are not there and to defer to FRB interpretations of TILA. Where the FRB has not filled an interstitial silence and it was not the Congressional intent to abstain from regulation, this Court has not only the ability, but the duty to fill that silence in harmony with the statutory scheme. In addition, many TILA violations involve interpreting the disclosure, not the requirement. In this case, this Court is duty bound to undertake procedures to do so.

 The defendants also argue that this case is mooted by the *Tomes* case and the Simplification and Reform Act of 1980. We do not agree. While the consent decree in *Tomes* may bar a portion of this case by the doctrine of res judicata, it in no way takes this cause out of the case or controversy requirement of Article III. Defendant's reliance on the 1980 Act is also misplaced. While the 1980 Act (to become effective April 1, 1982) has been used by courts in interpreting TILA, see *Anderson Brothers Ford v. Valencia,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783; *James v. Ford Motor Credit Co.,* 638 F.2d 147 (10th Cir. 1980), it should not be imposed retroactively. Even if the 1980 Act would moot this case by changes in the law, we refuse to apply a law explicitly time set by Congress prior to its effective date.

IV.

 The next issue before us is the res judicata effect of the consent judgment in *Tomes v. Easy Living, Inc.* It is the

general rule that a party is not bound by judgments in suits in which he was not a party; however, class actions provide an exception to that rule where the class is adequately represented or the party actually participates. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Under the Federal Rules of Civil Procedure, judgment in class actions includes those whom the Court finds to be members of the class. Fed.R.Civ.P. 23(c)(3). The class in *Tomes* consisted of "all consumers with whom defendant has entered into retail installment sales contracts or with whom it will do so in the future in connection with which defendant has taken or will take a security interest." The plaintiffs were members of this class. Absent special circumstances, the Pearsons are bound by the *Tomes* judgment. See Fed.R.Civ.P. 23(c)(3); Wright & Miller, 7A Federal Practice & Procedure: Civil § 1789; *Guy v. Abdulla*, 57 F.R.D. 14 (N.D.Ohio 1972).

The fact that the Pearsons are bound by the *Tomes* judgment does not, however, serve as a total bar to the instant action. To fairly protect the plaintiffs' interest, we must recognize that they were not notified of the *Tomes* suit and at least Charles Pearson had no knowledge of its existence. As such, it would be inequitable to impose the *Tomes* judgment on these plaintiffs beyond its limited scope. The Pearsons should not be foreclosed from raising violations not raised in *Tomes*, and since monetary damages were not granted in *Tomes* they are not foreclosed here. Therefore, claim five of the instant case is barred by the *Tomes* judgment, in that no legislative purpose of TILA could be served by its relitigation. However, claims one, two, three and four may be litigated and statutory money damages may be recovered.[4]

## V.

### A.

■ Our next task is to determine whether 15 U.S.C. § 1638 or § 1639 applies

to the November 9, 1979 transaction. There is no dispute that the May 18, 1979 transaction was a consumer credit sale not under an open end credit plan, and is, therefore, covered by § 1638. There is disagreement as to whether a refinancing agreement (with no additional purchases) is a consumer credit sale or more in the nature of a consumer loan, in which case § 1639 would apply. Since there are substantive differences in the disclosure requirements of § 1638 and § 1639, and these differences come into play in portions of the instant case, this issue must be decided.

As stated previously, § 1638 announces the required disclosures in connection with each consumer credit sale not under an open end credit plan. 15 U.S.C. § 1638(a). Section 1639 outlines disclosure requirements for "[a]ny creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor an open end consumer credit plan." 15 U.S.C. § 1639(a). Pertinent terms are defined in 15 U.S.C. § 1602:

> (h) The adjective "consumer," used in reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes.

> (g) The term "credit sale" refers to any sale with respect to which credit is extended or arranged by the seller. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compli-

---

4. If money damages had been recovered in *Tomes* by class members, the Pearsons would be barred from such relief here to prevent double recovery under the statute.

ance with his obligations under the contract.[5]

(i) The term "open end credit plan" refers to a plan prescribing the terms of credit transactions which may be made thereunder from time to time and under the terms of which a finance charge may be computed on the outstanding unpaid balance from time to time thereunder.

The refinancing contract is obviously not an open end credit plan. Therefore, it must fall within either § 1638 or § 1639. To fall within § 1638 as a consumer credit sale, the contract must meet four prerequisites. It must qualify under the bipartite definition of "consumer" in 15 U.S.C. § 1602(h). To do so, the Pearsons must be natural persons and the money, property or services which are the subject of the transaction must be used primarily for personal, family, household or agricultural purpose. See *American Express Co. v. Koerner*, 452 U.S. 205, 101 S.Ct. 2281, 68 L.Ed.2d 803 (1981). This transaction meets these two requirements. Next, the refinancing statement must satisfy the two criteria to be a "credit sale." There must be a sale, and the credit for such sale must be extended or arranged by the seller. This last requirement is not problematic, but the question of whether or not there was a sale is the root of this issue.

While TILA is nearly void of reference to refinancing, Regulation Z deals briefly with the subject.

If any existing extension of credit is refinanced . . . such transaction shall be considered a new transaction subject to the disclosure requirements of this part. 12 C.F.R. § 226.8(j).

This rule provides little help in determining whether the refinancing agreement here is a "credit sale" or some other type of extension of credit. It tells us only that the transaction is treated as a new transaction and disclosure is required; it does not tell us what disclosure is required.

It is our position that the refinancing arrangement in this case inherently involved a sale. While Charles Pearson did not purchase any additional goods on November 19, 1979, the concept of a sale permeated the refinancing transaction. There are several reasons for our decision. First, the Federal Reserve Board obviously intended refinancing to take on the character of the original financing contract or it would have directed what specific section of 12 C.F.R. § 226.8 applied to refinancing. Second, the nature of the refinancing is to extend or arrange credit in connection with a sale. While the actual sale is not in time with the extension of credit, it is the seller's motivation for credit extension. Finally, we feel it would be inequitable and irresponsible for courts to relax the disclosure requirements on a contract which is identical to and covers the same items as a previous contract requiring § 1638 disclosures. We, therefore, find that the refinancing agreement is a "consumer credit sale" controlled by § 1638 and 12 C.F.R. § 226.8(c).

### B.

The first two violations alleged in the plaintiffs' complaint relate to essentially the same problem. In computing the amount financed on line eight, the consumer finds this parenthetical note: (5 + 6 + 7(e)), and in computing the deferred payment price on line twelve, this note appears: (3 + 6 + 7(e) + 9). The problem is that there are no lines six and seven-e on the printed form. Plaintiffs contend this violates 12 C.F.R. § 226.6, which requires as a general rule that all required disclosures must be made clearly and conspicuously, in a meaningful sequence.

▮▮▮ Amount financed is a required disclosure under 15 U.S.C. § 1638(a)(5) and 12 C.F.R. § 226.8(c)(7).[6] Deferred payment price must also be disclosed. 12 C.F.R. § 226.8(c)(8)(ii). Disclosure of these amounts must be clear.

---

**5.** Regulation Z defines "credit sale" in substantially the same manner as 15 U.S.C. § 1602(g). 12 C.F.R. § 226.2(n).

**6.** If the refinancing agreement was classified as non-sale credit, the amount financed would still be required to be disclosed, 12 C.F.R. § 226.-8(d)(1), but the deferred payment price would not be a required disclosure.

Clarity is a relative concept ... Too much explanation can become so verbose that its informative value is lost. The requirement is not for absolute clarity or perfection, but merely for clear disclosure.

*Turoff v. May Co.*, 531 F.2d 1357, 1361 (6th Cir. 1976).

It is not necessary that the plaintiffs establish personal confusion, see *McGowan v. King, Inc.*, 569 F.2d 845 (5th Cir. 1978), but only that the disclosure is not relatively clear. We feel the disclosure here violates that standard. The parenthetical notes on the disclosure statement create doubt as to the components of that figure and would interfere with a consumer's ability to shop for credit and undertake an informed use of credit. This undercuts the purpose of the statute. See *Flesher v. Household Finance Corp.*, 640 F.2d 861 (6th Cir. 1981).

The *Flesher* decision helps us understand the requirement for clarity. In *Flesher*, no dollar sign was placed before the default and deferment charge. The district court found no TILA violation. The Sixth Circuit reversed, holding that this omission was a violation of the clarity requirement. In *Martin v. Household Finance Corp.*, No. C–1–74–498 (S.D.Ohio 7/1/76), this Court concluded that the inclusion of the word "none" and a dollar amount in the disclosure of credit insurance was a violation of clarity. We find the parenthetical notes in the instant case to be on par with the violation in *Flesher* and *Martin* and, therefore, a violation of TILA.

### C.

 The third violation of TILA alleged by the plaintiffs is the defendant's failure to itemize the finance charge. The finance charge is a required disclosure, 15 U.S.C. § 1638(a)(7), and where that charge consists of two or more types of charge, a description of each type is also required. 12 C.F.R. § 226.8(c)(8)(i).[7] In the instant case, the base finance charge and service charge are not described on the front page of the disclosure sheet, but are on the reverse side. This is a violation of TILA.

The FRB has explicitly dealt with the problem at hand. In Off.Staff Interp. FC–0153, Fed.Reg. 41015 (1978), the FRB faced the exact question posed to this Court. It stated that itemization was necessary only if under Ohio law these charges were of a different type.

Since that interpretation, two Ohio Courts of Appeals have held that the Ohio Retail Installment Sales Act, Ohio Rev.Code § 1317.06, requires these charges be treated as different types of charges. *Easy Living, Inc. v. Whitehead*, 65 Ohio App.2d 206, 417 N.E.2d 591, 16 Ohio Op.3d 155 (Ham.Co. 1979); *Ellis v. Hensley*, No. 39126 (Ohio Ct.App. Cuyahoga Co.1979). Inasmuch as base finance charge and service charge are different types of charges under Ohio law, we must defer to the FRB's official interpretation and find a violation of TILA. See *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 792, 63 L.Ed.2d 22 (1980).

The defendant contends that the *Whitehead* decision is distinguishable, because in that case the base finance charge and service charge were not included anywhere on the disclosure statement. In the present case, this information appeared on the back of the statement. This distinction does not abrogate the violation, it merely changes it from a violation of 12 C.F.R. § 226.8(c)(8)(i) to a violation of 12 C.F.R. § 226.8(a)(1), which requires disclosures to be made on same side of one page. See also *Edmundson v. Allen-Russell Ford, Inc.*, 577 F.2d 291 (5th Cir. 1978) cert. den. 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979).[8]

The defendant also argues that the *Whitehead* and *Ellis* decisions were implicitly overruled by the *Milhollin* decision. Such

---

7. The requirements for finance charge disclosure are the same for non-sale credit as for credit sales. See 15 U.S.C. § 1639(a)(5); 12 C.F.R. § 226.8(d).

8. Part of the *Edmundson* decision has been explicitly overruled by the Supreme Court, see *Anderson Brothers Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981), but the pertinent part to this case remains intact.

an argument is folly. The *Milhollin* Court demanded deference to FRB interpretation of TILA. 444 U.S. at 565, 100 S.Ct. at 792. The FRB has determined that disclosure depends on whether Ohio law defines basic finance charge and service charge as the same or different type charges. These state courts held that under Ohio law these charges were of different types, and, therefore, disclosure was required. This course of action is certainly not in conflict with *Milhollin.*

Since our disposition of this issue precludes any necessity of dealing with the fourth alleged violation and our decision as to the res judicata effect of *Tomes* removed the fifth violation from the case, we are now ready to address the defendant's various defenses to these violations.

### D.

The defendant asserts several defenses to these violations. We find these to be inapplicable in this case for the reasons stated below.

▇▇▇▇ The defendant states that the plaintiffs are barred by laches and waiver. We simply find no basis for these arguments. The instant case was filed within one year of the alleged violations, and is therefore within the statute of limitations. 15 U.S.C. § 1640(e). We can see no reason to apply the equitable doctrine of laches in a case such as this. In arguing waiver, the claim is that by entering the November 19, 1979 agreement, plaintiffs waived any violation in the May 18, 1979 transaction. Such an argument is absurd. It relies on a confusion in fact standard of liability, which is not proper under TILA. There is no indication that the Pearsons knowingly entered contracts which violated TILA with the intent to consent to such violations. As such, there is no waiver.

▇▇▇▇ The defendant maintains three statutory defenses. The first is based on 15 U.S.C. § 1640(b), which states that no liability will be assessed if the creditor, within fifteen days of discovering an error and prior to the institution of an action against

it, notifies the consumer concerned of the error and makes the appropriate adjustment. The defendant argues that its letter of December 10, 1979, disclosing the method of calculating the components of the finance charge and describing when their security interests terminated, serves as a defense under this section. We disagree. This defense is only available for mathematical or clerical errors, not informational errors. See *Thomka v. A. Z. Chevrolet, Inc.,* 619 F.2d 246 (3d Cir. 1980). Since the errors here are informational, the defense is inapplicable.

▇▇▇▇ The defendant also seeks defense in the shelter of 15 U.S.C. § 1640(c), which holds the creditor not liable if it shows that the violation was unintentional and resulted from a bona fide error notwithstanding maintenance of procedures reasonably adapted to avoid such error. We find this contention unpersuasive for two reasons. First, this defense is limited to clerical errors, not good faith errors of law. *Thomka v. A. Z. Chevrolet, Inc., id. Samboline v. Klein Sales Co.,* 422 F.Supp. 625 (S.D.N.Y.1976); *Buford v. American Finance Co.,* 333 F.Supp. 1243 (N.D.Ga.1971); *Ratner v. Chemical Bank New York Trust Co.,* 329 F.Supp. 270 (S.D.N.Y.1971). This is particularly true here, where the defendant used a printed form. *Samboline v. Klein Sales Co., id.* Second, there is nothing in this record suggesting that the defendant maintained a procedure reasonably adapted to avoid such error; in fact, the printed form flies in the face of such a position. See *Ives v. W. T. Grant Co.,* 522 F.2d 749 (2d Cir. 1975).

▇▇▇▇ Finally, the defendant relies on the defense that it acted in good faith conformity with FC–0153 and FC–0029. 15 U.S.C. § 1640(f). Defendant's reliance on FC–0153 is based on a misinterpretation of that FRB pronouncement. Even if this interpretation is honest and reasonable, it is not a defense. See *Valencia v. Anderson Brothers Ford,* 617 F.2d 1278 (7th Cir. 1980) rev'd on other grounds 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 242 (1981). Defendant's reliance on FC–0029 is totally misplaced, since it was overruled by FC–0153.

For the reasons stated above, we conclude the defendant has violated TILA and is liable for such violation.

## VI.

█ The final responsibility facing this Court is the assessment of damages. Plaintiffs' recovery is statutorily defined.

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

Under (a)(2)(A)(i), both plaintiffs are entitled to $538.20 under the May 18, 1979 contract, and Charles Pearson is entitled to $1,000.00 under the November 9, 1979 transaction.

There is a question here as to whether attorney's fees should be granted. Under 15 U.S.C. § 1640(a)(3) attorney's fees are available. The defendant argues that they should not be granted. We reject these arguments because they are based on the general theme that the plaintiffs' claims are without merit. We obviously disagree with that general theme. Attorney's fees, in a reasonable amount, and costs are also granted to the plaintiffs.