JOURNAL ENTRY AND OPINION
Defendant-appellant Lynn Howard appeals the small claims court's bench trial ruling on plaintiff-appellee Charles Ferrari's complaint and her counterclaim.
Appellant Howard ("customer") bought a used 1985 Plymouth Voyager from Ferrari ("merchant") on October 31, 1997. The total purchase price was $1,221.25 and was financed with a $550.00 down payment. Customer signed a security agreement for the remaining $671.25 owed.
The used vehicle order stated that the contract was to be paid in three payments of $200.00 each, with the first payment due on November 30, 1997. The order form failed to account for the additional $71.25 owed on the contract. The used vehicle order filled out by the merchant listed the following:
 car sales price: $1,100.00 tax 77.00 filing fees 40.00 license plates 4.25
Total $1,221.25
Neither the used vehicle order nor the security agreement contained any entry listed as a "finance charge." The actual cost of the filing fees was $21.00. At trial, merchant testified that he considered the remaining $19.00 as a "documentary service charge." Customer alleges, however, that it is a hidden finance charge.
The car was purchased without any warranty. After the down payment, customer failed to make any payments on the car. The first payment of $200.00 was due on November 1, 1997. The car stopped running on December 1, 1997.
Customer testified that at merchant's direction she signed a blank odometer certification form on October 31, 1997. Merchant allegedly later filled in the mileage on the title at the time he applied for the certificate of title on December 8, 1997.[1] Merchant testified that he partially filled out the form in front of customer, but admitted that he did not give her a copy of the form when she left with the car. Rather, customer received a copy of the odometer disclosure form at the time she picked up her certificate of title from merchant at the end of December 1997.
In early January 1998 merchant sued customer in small claims court for $671.25, the balance on the contract. Customer counterclaimed for violation of the federal Truth In Lending Act (TILA), 15 U.S.C. 1601 et seq.; the Ohio Retail Installment Sales Act (RISA), O.R.C. 1317.07; the Federal Odometer Act, 49 U.S.C. 32705; the Ohio Odometer Act, O.R.C.4549.45 and 4549.46; and the Ohio Consumer Sales Practice Act (CSPA).[2]
Customer requested a judgment declaring the contract unenforceable, an injunction restraining the merchant from further violations of the law, a release from any security agreement arising from the transaction, "monetary judgment," and attorney fees and costs. The small claims court denied customer's motion to transfer the action to a higher court.
The magistrate ruled that although the customer's purchase of the car constituted a consumer transaction under Ohio CSPA (O.R.C. 1345), she failed to request recission in a timely manner. The court additionally noted that the small claims court lacked jurisdiction over a claim for equitable relief; the court therefore denied customer's claim for relief under the Ohio CSPA.
The court also found that merchant did not qualify as a "creditor" under TILA and that therefore customer was not entitled to relief under this statute. The court ruled that merchant complied with the Ohio Odometer Act by providing the odometer reading on the certificate of transfer of title and that the Federal Odometer Act did not apply to this vehicle because it was over ten years old and thus exempt from the act per 49 C.F.R. § 580.5(c).[3]
The court ruled that merchant violated the Ohio RISA by charging customer a "documentary service charge" without proving that this charge was a customary charge in the industry and awarded customer $200.00 in damages. As a result of this violation, the court held that customer was entitled to reasonable attorney fees for the violations of CSPA and RISA. Customer was subsequently awarded $600.00 in attorney fees, although the invoices submitted to the court at the hearing on attorney fees provided an itemized statement for $7,706.50.
The court also found customer liable on merchant's complaint for the amount of $671.25 and offset this amount against the $220.00 award and $600.00 attorney fees, granting judgment for customer in the amount of $128.75 plus costs with statutory interest from the date of judgment.
Appellant customer lists seven assignments of error.[4] She argues the court erred in ruling that TILA did not apply, in ruling that the federal and state odometer laws were not applicable and/or violated, and in determining the amounts awarded for attorney fees and in the judgment.
Appellant's first two assignments of error are related and will be addressed together:
 I. THE COURT COMMITTED REVERSIBLE ERROR BECAUSE THE $19 EXCESS IN THE FILING FEE WAS A "FINANCE CHARGE" UNDER THE TRUTH IN LENDING ACT.
 II. THE COURT COMMITTED REVERSIBLE ERROR IN NOT FINDING A VIOLATION OF THE TRUTH IN LENDING ACT BECAUSE THE CONTRACT FAILED TO DISCLOSE, INTER ALIA: (A) THE $19 AS A "FINANCE CHARGE"; AND (B) THE NUMBER, AMOUNT AND DUE DATE OF THE $71.25 PAYMENT.
Congress passed the Truth In Lending Act to protect consumers from dishonest business tactics and to provide them with an accurate means of comparing credit prices and assessing the cost of deferring payment.Mourning v. Family Publications Service (1973), 411 U.S. 356 at 364. "TILA is a remedial statute and should be given a broad, liberal construction so as to serve its purpose." Pearson v. Easy Living, Inc. (1981), 534 F. Supp. 884 at 890. In fact, the failure to disclose does not even have to result in the consumer being deceived: "[i]t is not sufficient for a lender to comply with the spirit of TILA; strict compliance with the disclosure requirement is necessary." Id. Additionally, unless the lender or merchant has a statutory defense, "[o]nce a violation is found, liability is imposed * * *." Id.
Further, the amount in question is not significant. The failure to clearly disclose a finance charge as required by TILA automatically triggers liability. Courts have held merchants liable for violating the act when the undisclosed amount was as small as $1.00. Buford v. WelcomeFinance Co. (1971), 333 F. Supp. 1243; Weaver v. Trust Company ofColumbus (1980), 632 F.2d 460 (amount in dispute was $7.50.)
Merchant claims, however, and the trial court held, that he is not liable under TILA because he does not fit the definition of a "creditor." TILA states
 The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence * * * (Emphasis added.)
The regulation further restricts this definition to exclude any down payment as one of the four installment payments.12 C.F.R. § 226.2(a)(17).[5]
The contract between the parties states that payments are due in three payments of $200.00 each. The merchant states that he forgot to include a final payment of $71.25, an amount necessary to reach the total amount agreed to by the parties. Even if we were to include this last payment, the number of payments would not exceed four. Under that clause, therefore, merchant does not qualify as a creditor.
There is an alternative qualification, however, which the magistrate misunderstood.[6] The magistrate erroneously interpreted the statute to require both more than four installment payments and a finance charge, in order to qualify the merchant as a creditor under TILA. The trial court, therefore, did not address the issue of whether the excess charge in the filing fee constituted a finance charge.
From the facts in the record, however, merchant qualifies as a creditor under the alternate clause which confers creditor status for a merchant when the contract is one in "which the payment of a finance charge is or may be required." Merchant argues that the extra $19.00 he included in the filing fee was a "documentary service charge" and not a finance charge. He relies on R.C. 1317.07, "Requirements of a retail installment contract," which states, "[a] documentary service charge customarily and presently being paid on May 9, 1949, in a particular business and area may be charged if the charge does not exceed fifty dollars per sale." Ohio law, however, does not control the application of the federal statute.12 C.F.R. § 226.4(a) defines a finance charge as
 the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.
Examples of finance charges include "[s]ervice, transaction, activity, and carrying charges, including any charge imposed on a checking or other transaction account to the extent that the charge exceeds the charge for a similar amount without a credit feature." 12 C.F.R. § 226.4(b). The regulation also provides a list of examples of charges which are not finance charges: a documentary service charge is not included in the exclusion list.
In a case with facts almost identical to those in the case at bar, a federal court held that an excess amount charged for anything other than what the contract described and was actually paid for (here, filing fees) was a hidden finance charge. Williams v. Bill Watson Ford, Inc. (1976),423 F. Supp. 345 at 348. There is no evidence in the case at bar that the filing fees included a documentary service charge. Unless the merchant can show he charges the identical "documentary service charge" in his cash transactions, the charge is a hidden finance charge.
Customer's second assignment of error states that merchant violated the statute by failing to correctly state the payment terms. Because the trial court ruled that merchant is not a creditor and therefore that TILA does not apply to this case, the trial court did not address this issue. This case is remanded to the trial court to determine (1) whether merchant qualifies as a creditor because of the amount of credit he extends per year, and (2) whether the amount he charges for a filing fee in a credit contract exceeds the amount he charges for a filing fee on a cash sale, thereby constituting a finance charge. If the evidence shows that merchant is a creditor, the trial court is instructed to address the issue of whether he violated TILA in his documentation on the sales contract. If merchant is determined to be in violation of TILA, the trial court is further instructed to readdress the issue of attorney fees as mandated in 15 U.S.C. 1640(a)(3)
Appellant's third assignment of error states:
 III. THE COURT COMMITTED REVERSIBLE ERROR BECAUSE THE OHIO ODOMETER ROLLBACK AND DISCLOSURE ACT WAS VIOLATED IN THIS CASE.
Customer claims that because she was not provided with a copy of an odometer reading at the time she made her down payment and drove away in the auto, she was not provided with the odometer reading as required by law. Merchant counters that by stating the correct odometer reading on the certificate of title, he has complied with the law.[7] We agree.
Neither party disputes the accuracy of the reading, and customer admits that she knew the correct odometer reading when she drove the car from the lot.
The Ohio Odometer and Rollback Disclosure Act, R.C. §§ 4549.41
through 4549.51, governs the procedure for disclosure of odometer readings in the sale or transfer of autos. R.C. 4549.46 states, in pertinent part, "[n]o transferor shall fail to provide the true and complete odometer disclosures required by section 4505.06 of the Revised Code." R.C. 4504.06 controls the procedure for applying for the certificate of title. It states in pertinent part, "[t]he registrar shall prescribe an affidavit in which the transferor shall swear * * * except as provided in this section, the true odometer reading of the motor vehicle." R.C. 4505.06(C)(1). The odometer disclosure statement then lists the three exceptions, one of which is that the "odometer reading reflects the amount of mileage in excess of its mechanical limits." This box is checked on the title for the car in question. While this odometer disclosure form is not required to be on the same paper as the certificate of title, it frequently is, and is in this case.
This court has held that a car dealer has "complied with R.C. 4549.46
by providing complete disclosures on the back of the certificate of the title in question." Buchanan v. Spitzer Motor City, Inc. (Feb. 7, 1991), Cuyahoga App. Nos. 57893, 58058, unreported, 1991 Ohio App. LEXIS 528 at 25. Despite merchant's failure to provide customer with a copy of the odometer disclosure form at the time of the sale and despite his failure to fill in the mileage on the power of attorney form signed by customer for title transfer, merchant complied with Ohio law regarding disclosure of the odometer reading when he provided it on the certificate of title.
Despite buyer's claim that seller was obliged to give an odometer statement to buyer at the time of sale, "R.C. 4549.46 does not provide a specific time frame for the disclosure of the odometer statement, nor does it require that the disclosure be made at the time of sale." T.C.I.Insurance v. Moore (June 17, 1991), Clermont App. No. CA90-12-111, unreported, 1991 Ohio App. LEXIS 2815, at *4 While we believe the better practice would be to disclose in writing the mileage on the car during negotiation for sale, Ohio law does not require this timing. Seller was not in violation of the law in the manner in which he disclosed the mileage to buyer by stating it on the title at the time of transfer.
The trial court's ruling on this issue is affirmed.
This case is affirmed in part and reversed in part and remanded for examination of the issues of whether merchant qualifies as a creditor by addressing the amount of credit he extends per year, and whether the amount he charges for a filing fee in a credit transaction exceeds the amount he charges for a filing fee on a cash sale, and thereby constituted a finance charge. If the evidence shows that merchant is a creditor, the trial court is instructed to address the issue of whether he violated TILA in his documentation on the sales contract. If merchant is determined to be in violation of TILA, the trial court is further instructed to readdress the issue of attorney fees as mandated in15 U.S.C. 1640(a)(3).
This cause is affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.
It is, therefore, ordered that appellant and appellee shall pay their own costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., CONCURS IN JUDGMENT ONLY; MICHAEL J. CORRIGAN, J., DISSENTS (See Dissenting Opinion).
[1] The memorandum of certificate of title was obtained on December 30, 1997.
[2] Customer fails to cite a code section in her counterclaim to support this claim.
[3] We note that some courts have held that the Federal Odometer "Act does not authorize the Secretary to make an exception to the disclosure requirements for transferors of vehicles that are ten or more years old." Lee v. Gallup Auto Sales (1998), 135 F.3d 1359,1361-1362. The exemption still exists in the regulation, however. (The regulation is now numbered 49 C.F.R. § 580.17(a)(3).)
[4] Assignment Number 6 was omitted from appellant's statement of assignments of error.
[5] The regulation also defines regularly extends as extending credit more than 25 times * * * in the preceding calendar year. 12 C.F.R.(a)(17) n. 3. Neither the parties nor the court addressed the frequency with which merchant extended credit to his customers, and we cannot discern from the record if he qualifies as a creditor under this portion of the definition.
[6] In her decision the magistrate correctly states the statute. She then notes, [i]n the present case, Plaintiff extended credit to the Defendant in the amount of $671.25, which would have been payable in four installments. Therefore, TILA does not apply to the transaction in the present case and Defendant is not entitled to prevail on her counterclaim for damages under this statute. Magistrate's Decision with Findings of Fact and Conclusions of Law at 2, 3. She bases her decision that seller is not a creditor on this interpretation of the law.
The magistrate's reading of the law omits the alternative means by which defendant could have qualified as a creditor under the first clause of the statute. The first clause states that a creditor is either a person who extends credit with over four installments or one who charges a finance charge for extending credit. The buyer clearly asserts that the unexplained charge of $19.00 is a finance charge. This charge qualifies the seller as a creditor according to the statute.
The dissent ignores this mistake and concludes that because "[t]he trial court already has extensively addressed the issue and determined that TILA regulations were not, in fact, applicable to this transaction[,]" the appeals court has no business correcting the trial court. On the contrary, the fundamental purpose of the appellate court is to correct such mistakes of law. The dissent ignores the fact that the trial court's decision was predicated on a misinterpretation of the law. A significant misinterpretation of the law which directly affects the outcome of the case, moreover, qualifies as an abuse of discretion, contrary to the dissent's opinion.
[7] The Magistrate's Decision with findings of fact and conclusions of law states, "Defendant was given her copy of the Odometer Disclosure statement when she picked up her Memorandum of Certificate of Title from Plaintiff at the end of December, 1997." Id. at 2.