RELIABLE FINANCE COMPANY *v.*
JENKINS.

(No. 80-CV-41142—Decided
June 18, 1982.)

Hamilton County Municipal Court.

*Mr. Lee B. Kasson, Jr.,* for plaintiff.
*Mr. Michael A. Kennedy,* for defendant.

PAINTER, J. This matter involves a complaint on a note filed by Reliable Finance Company against the defendant, Sharon L. Jenkins. On December 18, 1972, Jenkins borrowed $1,999.83 from Reliable Finance in connection with the purchase of a 1968 Buick automobile. The finance company took a security interest in the automobile.

At the time of the loan, three documents were executed by the parties. Two of the documents, the "Note" and the "Security Agreement and Financing Statement," contained much the same information which included the basic terms of the loan. The third document, "Disclosure Statement of Loan," purported on its face to set out all disclosures required to be made in compliance with the "Federal Consumer Credit Protection Act Title 1." That Act requires what are commonly known as truth-in-lending disclosures. See Section 1601 *et seq.,* Title 15, U.S. Code, and 12 C.F.R. 226.1 *et seq.*

The total of payments to be made, as indicated in the three documents, was $2,639.16. The final payment date was set at January 18, 1975. From January 1973 to August 1980, Jenkins made payments to Reliable Finance totaling $1,916.69. She made no payments after August 1980.

In December 1980, Reliable Finance instituted this action against the defendant for $1,034.51. It was claimed by the plaintiff that this amount constituted arrearage and late charges. Jenkins answered denying the amount owed and asserting, by way of recoupment, certain violations of federal truth-in-lending law against the plaintiff. See *Easy Living, Inc.* v. *Whitehead* (Aug. 16, 1979), Hamilton App. No. C-780286 [16 O.O.3d 155].

The principal contention of the defendant under her truth-in-lending defense was that the plaintiff failed to fill in on its "Disclosure Statement of Loan" the block entitled "Credit Life" when, in fact, $54.37 was charged for credit life and financed by the finance company. Because this block was not filled in, the charge for the credit life premium was not included in either the "Amount Financed" or the "Finance Charge" on the disclosure statement. The defendant asserted that, since the financed insurance premium must be included in one or the other of those items, there was a misstatement of one or the other in violation of the truth-in-lending law. See 12 C.F.R. 226.8(d)(1) and 226.8(d)(3).

The defendant moved for summary judgment on her truth-in-lending defense.

The plaintiff responded by memorandum and affidavit which raised the defense of clerical error. See Section 1640(c), Title 15, U.S. Code. The defendant's motion for summary judgment was denied.

The matter came to trial on April 1, 1982. Because it was clear that the plaintiff had violated truth-in-lending law by its failure to include the cost of credit life insurance in either the "Amount Financed" or the "Finance Charge," the plaintiff had the burden at trial of establishing the existence of clerical error to negate the defense asserted by Jenkins.

The defense of clerical error is set out in Section 1640(c) which states the following:

"A creditor * * * may not be held liable in any action brought under this section * * * for a violation of this subchapter if the creditor * * * shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

The cases which have interpreted this section have held that a creditor must establish not just a procedure designed to assure compliance, but also a procedure designed to avoid and prevent unintentional errors. In short, the creditor must establish a reasonable rechecking procedure in regard to truth-in-lending disclosures. In *Mirabal* v. *GMAC* (C.A. 7, 1976), 537 F.2d 871, the court of appeals dealt with the question presented here, namely, the adequacy of procedures required under Section 1640(c). In that case, the creditor had made a mathematical error in computing the "Annual Percentage Rate" on a loan. The court stated that the burden was upon the creditor to prove, first, that the error was unintentional and bona fide, and, second, that procedures were maintained to avoid such errors. In *Mirabal,* the finance company established that it trained all dealers in the method of computing the "Annual Percentage Rate" and, in fact, furnished charts and

manuals for such computation. The court found these measures inadequate. The court made the important distinction between procedures which are designed to assure compliance and procedures which are designed to avoid errors. Elaborating on this distinction, the court stated at page 878 that:

"This means that the procedures which Congress had in mind were to contain an extra preventative step, a safety catch or a rechecking mechanism."

In *Turner* v. *Firestone Tire & Rubber Co.* (C.A. 5, 1976), 537 F.2d 1296, the court was faced with the precise error which has occurred here — the failure to fill in the blank space on a disclosure form provided for the cost of credit life insurance. The court found that there was no doubt that such a failure was violative of the truth-in-lending law. Moreover, the court in *Turner* found that the finance company had failed to meet its burden of demonstrating the maintenance of procedures designed to avoid such errors. Speaking of the exact error which exists in this case, the *Turner* court stated as follows at 1298:

"While the error committed here is one that is easy to commit, it is also the type of error that can be easily detected by implementation of an inexpensive screening procedure."

See, also, *Gallegos* v. *Stokes* (C.A. 10, 1979), 593 F.2d 372.

At trial the plaintiff called as its only witness the general manager of the finance company. He testified that it was customary in processing a loan in any office of the finance company that a secretary would check to see that all blocks were filled in before the disclosure statement was typed. He admitted that the secretaries have no expertise and no training in regard to the substance of truth-in-lending disclosures. The secretaries make no independent computations.

The evidence presented by the plaintiff in the form of the testimony of its

general manager was inadequate to establish the required procedures under Section 1640(c). First, it must be noted that the particular disclosure statement at issue in the case *sub judice* contained no parts which would be typed in by a secretary. All information on the pre-printed disclosure form was handwritten. This fact detracts, to some extent, from the credibility of the plaintiff's witness in regard to the procedure put forth. Secondly, the procedure presented by the plaintiff, even if taken at face value, was insufficient because it was not reasonably designed to prevent errors as required under the statute. A simple check by a person totally unfamiliar with the truth-in-lending computations to see that all blocks are filled in on the disclosure statement does not achieve the goal of prevention of errors. Many errors do not, in fact, result from a failure to fill in a block on a form. Even in this case, the error is not directly one of failing to fill in the "Credit Life" block. The error here is that the cost of credit life insurance was not included in either the "Finance Charge" or the "Amount Financed" on the disclosure form, thus misstating one or the other of those amounts.

The court must also note that the plaintiff was bound to prove, in addition to proving the maintenance of adequate procedures to correct errors, that the mistake was unintentional and bona fide. While this element of proof may be somewhat difficult in a loan which is a good many years old, the plaintiff offered no evidence on this element.

The defendant, then, established at trial her defense in the nature of recoupment under Section 1601. The defendant is entitled, under Section 1640(a), to damages of $1,000 and reasonable attorney's fees. Since the plaintiff's claim was for $1,034.51, all but $34.51 of the plaintiff's claim is set off by the statutory damages. The court takes notice of the "Affidavit of Attorney" filed by the defendant stating that eighteen hours and fifty-two minutes were spent by counsel for the defendant in conducting the defense of the case. It is obvious that any award of attorney's fees would completely set off the remainder of the claim of the plaintiff. Because the defendant has prevailed on her defense of recoupment in full, it is unnecessary to consider the amount of the plaintiff's claim established at trial.

Judgment is for the defendant.

*Judgment for defendant.*