Inez GALLEGOS, Plaintiff-Appellee,

v.

Mel STOKES, d/b/a Big "A" Auto Parts and Hopper Motor Company, Defendant-Appellant.

No. 77–1573.

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 26, 1979.

Decided March 5, 1979.

Gary J. Martone, Andres A. Benavidez and Anthony V. Silva, Albuquerque, N. M., for plaintiff-appellee.

Bruce P. Moore, Albuquerque, N. M., for defendant-appellant.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a trial court judgment in favor of plaintiff-appellee Inez Gallegos against Mel Stokes. Gallegos' complaint alleged several violations of the Federal Truth-In-Lending Act (TIL), 15 U.S.C. §§ 1601 *et seq.* and the Federal Reserve Board Regulations, 12 C.F.R. §§ 226.1 *et seq.* (Regulation Z), the New Mexico Motor Vehicle Sales Finance Act,

N.M.Stat.Ann. §§ 50–15–1 *et seq.*, and the New Mexico Uniform Commercial Code, N.M.Stat.Ann. §§ 50A–1–101 *et seq.* Stokes appeals from a judgment for statutory damages of $643.12, attorney's fees of $300, and costs for violations of TIL disclosure provisions. The trial court had jurisdiction under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337 over the TIL claim, and over the state law claims under pendent jurisdiction.

The issues on appeal only concern TIL violations: whether the trial court properly entertained the defense by Stokes that the transaction with Gallegos was commercial and not subject to the disclosure requirements of TIL; whether this is a consumer credit transaction covered by TIL, or an exempted commercial transaction; and whether Stokes can avoid liability because the disclosure errors were made unintentionally and in good faith. For the reasons stated below, we affirm the judgment of the trial court.

On August 15, 1975, Gallegos purchased a 1969 Dodge pickup truck from Stokes, who was manager of Hopper Auto Sales in Albuquerque. (It is stipulated that Stokes, who later purchased the business, is the proper defendant.) The total cash price was $1,395. Gallegos traded in her 1965 Chevrolet station wagon and some jewelry, valued at $150 and $200 respectively, reducing the total due to $1,045. A $45 fee for license, certificate of title and registration was not included in the cash price.

Stokes prepared a security agreement and the other papers necessary to complete the transaction. The agreement provided for 24 monthly installments of $59.46 each, to begin on September 5, 1975. The annual percentage interest rate was stated as 27.40% and the total finance charge as $321.56. Gallegos failed to make the first payment and Hopper Motors repossessed the truck. None of her down payment was returned, and no deficiency judgment was sought by Hopper Motors.

We accept the findings of the trial court that the total finance charge should have been stated as $292.60, based on N.M.Stat. Ann. § 50–15–8 which permits a 14% annual percentage rate calculated without regard to whether the sale provides for installment payments. The monthly payments would have been $55.73 and the annual percentage rate as 24.93%. The disclosure provisions were violated by overstating the finance charge, § 1605 and 12 C.F.R. § 226.4, the annual percentage rate, § 1606 and 12 C.F.R. § 226.5(b), and the monthly payment, § 1638(a)(8) and 12 C.F.R. § 226.8(b)(3). In addition, Stokes violated 12 C.F.R. § 226.-4(b)(4) because he neither included the finance charge nor itemized and separately disclosed the license, certificate of title, and registration fees.

I

Stokes did not plead as an affirmative defense that the transaction with Mrs. Gallegos fell within the commercial use exemption to TIL. 15 U.S.C. § 1603(1). At trial, however, both Gallegos and Stokes were questioned by Stokes' attorney concerning Gallegos' reasons for purchasing a pickup truck. Counsel for Gallegos did not object at the time to her cross-examination by the defense on this issue, and only objected to a question asked on direct examination of Stokes after it was answered, and following a court recess. When a motion was made to strike the questions relating to commercial use of the vehicle, no explanation was tendered as to the basis of the motion.

Fed.R.Civ.P. 8(c) requires a party to plead an avoidance or affirmative defense in response to a preceding pleading. In his answer, Stokes denied that the complaint was actionable under any of the counts, and specifically pleaded as affirmative defenses that the complaint failed to state a cause of action upon which relief could be granted, estoppel and waiver. Fed.R.Civ.P. 15(b), however, states that if "issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

■ Our cases have held that when an issue, not appearing in the pleadings, is raised without objection at trial, it is deemed to have been tried by the implied consent of the parties. *E. g., United States Fidelity and Guar. Co. v. United States*, 389 F.2d 697 (10th Cir. 1968); *Kaye v. Smitherman*, 225 F.2d 583 (10th Cir.), *cert. denied*, 350 U.S. 913, 76 S.Ct. 197, 100 L.Ed. 800 (1955). We hold the trial judge did not err when he allowed testimony on the commercial use defense..

## II

We turn next to whether the trial court was clearly erroneous in deciding that Gallegos' purchase was not within the commercial use exception to TIL. This is a factual issue to be resolved by the trier of fact. *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230 (10th Cir.), *op. on rehearing en banc*, 523 F.2d 1 (10th Cir. 1975). We find sufficient evidence in the record to support the trial judge's finding that the truck was primarily for personal use. Mrs. Gallegos traded in her only automobile, and the truck became her sole means of transportation. Stokes accepted her jewelry as part of the down payment. Her testimony at trial indicated she bought a truck because she moved often, and it would help transport her family and possessions. The defense also elicited testimony that she intended to use the truck to sell fresh produce, obtained from the Estancia Valley, as a means of making money. But Stokes made an attempt to comply with the TIL disclosures requirements, evidently assuming this was a consumer credit transaction. Had he believed then that the sale was not "primarily for personal, family, household, or agricultural purposes" he would not have attempted to comply.

■ Cases considering whether a transaction is primarily consumer or commercial in nature look to the transaction as a whole and the purpose for which credit was extended. Many involve mortgaging real property or property purchased for rental use. *Gerasta v. Hibernia Nat'l Bank*, 411 F.Supp. 176, 185 (E.D.La.1975), *modified*, 575 F.2d 580 (5th Cir. 1978) (second mortgage on future residence is consumer transaction); *Adema v. Great N. Dev. Co.*, 374 F.Supp. 318, 319 (N.D.Ga.1973) (lots purchased for investment reasons do not make buyer a consumer); *Puckett v. Georgia Homes, Inc.*, 369 F.Supp. 614, 619 (D.S.C. 1974) (purchase of mobile home to be used as rental unit is not a consumer credit transaction); *Sapenter v. Dreyco, Inc.*, 326 F.Supp. 871, 873 (E.D.La.) *aff'd without op.*, 450 F.2d 941 (5th Cir. 1971), *cert. denied*, 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1972) (cash from second mortgage on residence to meet payments on investment property is not consumer transaction).

In a case where a truck was purchased for personal as well as business use, the TIL disclosures were required to be made. *Allen v. City Dodge, Inc.*, 5 Cons.Cred. Guide (CCH) ¶ 98,428 (N.D.Ga. Sept. 8, 1975). The situation here presents an even stronger case for requiring disclosure, since it is more likely she would use it primarily for personal, family and household purposes.

■ The purpose of TIL is to provide consumers with meaningful disclosures of credit terms and conditions, and encourage the informed use of credit. 15 U.S.C. § 1601(a). Theoretically TIL permits a consumer to "shop for credit" and thus compensate for a weaker bargaining position compared with business and commercial borrowers. Mrs. Gallegos did not have an ongoing business when she purchased the truck, nor the prospect of establishing one. She was a widow with a fifth grade education, who traded her only car and personal jewelry in on this purchase. Even if we take her testimony in the light most favorable to Stokes, she was a person engaged in a consumer credit transaction of the type intended to be protected by the required TIL disclosures.

## III

We now consider the issue of whether Stokes should be found liable for a good faith and unintentional error. This is not a case where the plaintiff suffered no actual

harm as a result of improper TIL disclosures. Mrs. Gallegos was left without transportation. She lost the car and jewelry she traded, considered to be worth $350, and had the use of the truck only a little more than one month before it was repossessed.

██ TIL is a remedial statute to be broadly construed to further the Congressional purpose of meaningful disclosure of credit terms. *Rachbach v. Cogswell,* 547 F.2d 502, 505 (10th Cir. 1976). Congress built in an automatic civil penalty, 15 U.S.C. § 1640(a), to encourage private enforcement and remove the need to prove actual damages. In a case like this, the consumer receives twice the finance charge (at least $100 but not more than $1,000), costs and attorney's fees. The penalty is not burdensome and is not to be narrowly construed. *Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The creditor is to be relieved of liability only if he shows "by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error *notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.*" (Emphasis supplied.) 15 U.S.C. § 1640(c). It has been held that the statute requires procedures designed to avoid and prevent errors which might slip through procedures aimed at good faith compliance, "a safety catch or a rechecking mechanism." *Mirabal v. General Motors Acceptance Corp.,* 537 F.2d 871, 878 (7th Cir. 1976). The court found that Stokes calculated the finance charge, annual percentage rate, amount and number of monthly payments only once, and did not recompute or review his figures; that he had no preventive mechanism for catching errors. Stokes does not fall within the good faith exception of § 1640(c).

We therefore affirm the trial court award of damages, costs and attorney's fees. Mrs. Gallegos is also entitled to attorney's fees for the successful defense of this appeal. *See Thomas v. Myers-Dickson Furniture Co.,* 479 F.2d 740 (5th Cir. 1973). We grant an additional $300 for attorney's fees for the appeal.