Mildred **ABEL**

v.

**KNICKERBOCKER REALTY CO.**

Civ. No. B–93–658.

United States District Court,
D. Maryland.

March 8, 1994.

Elizabeth A. Renuart, St. Ambrose Legal Services, Baltimore, MD, for plaintiff.

Dennis W. King, Danoff & King, Towson, MD, for defendant.

WALTER E. BLACK, Jr., Chief Judge.

Presently pending before the Court in the above-captioned case is a Motion for Summary Judgment filed on behalf of plaintiff Mildred Abel. On March 4, 1993, Abel, as the personal representative of the estate of James Broxton, filed a complaint against defendant Knickerbocker Realty Co. ("Knickerbocker") alleging a violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and its regulations, 12 C.F.R. § 226.1 *et seq.* ("Regulation Z"), by Knickerbocker in connection with a loan made to James and Elsie Broxton on March 6, 1990. As relief, Abel requests, *inter alia,* that the Court enforce her rescission of the loan transaction, declare the security interest in the Broxton home held by Knickerbocker void, and award her statutory damages of $1,000 and attorney's fees.

Abel filed the present motion for summary judgment on November 29, 1993. Knickerbocker, while conceding that it violated TILA by failing to make a required disclosure, contends that its omission was a "bona fide error" for which it is not liable under TILA. Knickerbocker also contends that statutory damages are barred by the statute of limitations. Abel, in her reply, contends that Knickerbocker cannot rely upon the "bona fide error" defense because it was not affirmatively pled. Alternatively, Abel contends that Knickerbocker fails to meet the requirements necessary for assertion of the defense.

## I

The facts of this case are not in dispute. On March 6, 1990, Knickerbocker lent James and Elsie Broxton the principal amount of $14,500 to be repaid monthly over ten years at 18% interest with an annual percentage rate of 18.57 percent. The loan was secured by a Deed of Trust on the Broxtons' residence located at 1813 East 33rd Street in Baltimore. With the proceeds of the loan the Broxtons paid $2,980 for home improvements and paid off existing loans totalling $6,349.68. The Broxtons paid settlement and title costs of $989, an origination fee of $290, and a broker fee of $1,160. The Broxtons received a disclosure statement indicating a finance charge of $16,852.40, an amount financed of $14,210 and total payments of $31,352.40. Knickerbocker concedes that the finance charge disclosed does not include the $290 origination fee and that the true finance charge was $17,142.40.

Elsie Broxton died on July 25, 1991. James Broxton died on January 8, 1992. On October 20, 1992, Abel was appointed the personal representative of James Broxton's estate. Twenty-nine payments were made under the terms of the loan, totalling $7,576.83. By letter dated November 2, 1992, Abel advised Knickerbocker that she was rescinding the loan due to Knickerbocker's violation of TILA by failing to include the origination fee in the finance charge disclosure. In the letter, Abel also requested that Knickerbocker terminate its security interest within 20 days and tendered $4,484.17 to Knickerbocker in proposed monthly payments of $100. Knickerbocker has taken no steps to terminate its security interest, honor Abel's rescission, or accept her tender. Abel filed this suit seeking relief under TILA on March 4, 1993.

## II

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment can only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990). In this case,

the parties agree that no material facts are in dispute, but only the legal conclusions to be drawn from those facts. Consequently, this case is ideal for disposition by summary judgment.

### III

■ Abel contends that Knickerbocker's failure to include the origination fee in the finance charge disclosure is a violation of TILA enabling her to rescind the loan transaction. Under TILA, a lender in a closed-end consumer credit transaction is required to disclose, among other things, the finance charge to the obligor. 15 U.S.C. § 1638(a)(3), 12 C.F.R. § 226.18(d). Section 1605 provides that

> the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.

15 U.S.C. § 1605(a). Knickerbocker concedes that the origination fee should have been included in the finance charge. *See* 15 U.S.C. § 1605(a)(3); 12 C.F.R. § 226.4(b)(3) (listing loan fees, finder's fees, assumption fees, points or similar charges as being properly included in a finance charge). By failing to include the origination fee in the finance charge, Knickerbocker underestimated the finance charge by $290. Any discrepancy of more than $10 above or below the true finance charge is considered inaccurate in a transaction involving more than $1,000. 12 C.F.R. § 226.18(d). Accordingly, Knickerbocker violated § 1638 of TILA and § 226.-18(d) of Regulation Z by failing to disclose an accurate finance charge.

As a result, Abel contends that Knickerbocker's failure to disclose the accurate finance charges entitles her to rescind the loan transaction. Normally under TILA, in transactions involving the retention of a security interest in the obligor's residence, the

obligor has the right to rescind within 3 business days of the latter of the consummation of the transaction or delivery of material disclosures. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3). However, Regulation Z extends the time in certain circumstances:

> If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all the consumer's interest in the property, or upon sale of the property, whichever occurs first.

12 C.F.R. § 226.23(a)(3). In this case, Abel brought suit as personal representative [1] within 3 years of the consummation of the transaction. Because Knickerbocker never disclosed an accurate finance charge, § 226.-23(a)(3) applies, and her effort to rescind is thereby timely.

### IV

■ Knickerbocker asserts that Abel may not invoke rescission under § 1635 because its failure to include the origination fee in the finance charge was a "bona fide error" under § 1640(c) for which it is not liable. Abel responds that the "bona fide error" defense is not available to Knickerbocker for two reasons. First, Abel contends that Knickerbocker failed to affirmatively plead the defense and thus has waived its invocation. Alternatively, Abel asserts that Knickerbocker has not met its burden of showing the availability of the defense.

■ Under Rule 8 of the Federal Rules of Civil Procedure, a party is required to set forth affirmatively nineteen enumerated affirmative defenses and "any other matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(c). Abel has drawn the Court's attention to *Gallegos v. Stokes*, 593 F.2d 372, 374 (10th Cir.1979), wherein the Tenth Circuit implied that the commercial use exemption under § 1603 of TILA was a defense which should have been raised affirmatively. However, the *Gallegos* court allowed testimony adduced at trial on the issue as being tried by the implied consent of

---

1. In this context, the Court observes that the Fifth Circuit has held that a TILA suit seeking remedy for improper disclosure survives the death of the obligor and may be maintained by the administrator of the obligor's estate. *James v. Home Construction Company of Mobile*, 621 F.2d 727, 730 (5th Cir.1980).

the parties pursuant to Rule 15(b). *Id.* at 374–75. In any event, it is well-established that waiver does not automatically follow from the failure of a defendant to raise an affirmative defense in the answer. *See Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir.1983). As this Court has held before, absent prejudice to the opposing party, an affirmative defense may be raised at summary judgment even though not specifically pled. *EEOC v. Peterson, Howell & Heather, Inc.*, 702 F.Supp. 1213, 1217 n. 6 (D.Md.1989) (Black, D.J.). Given that Abel anticipated Knickerbocker's invocation of the "bona fide error" defense in her motion for summary judgment, the Court can discern no prejudice to her by Knickerbocker's raising the defense in its opposition. Therefore, the Court will consider the applicability of the "bona fide error" defense.

■ Section 1640 provides for the "bona fide error" defense as follows:

A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

15 U.S.C. § 1640(c). Knickerbocker asserts that its failure to include the origination fee in the finance charge was simply an error of calculation. Abel disputes that Knickerbocker's claimed error is a bona fide error within the meaning of § 1640 and in support has submitted the deposition of Robert C. Ness, the settlement attorney who prepared the disclosure form, who stated that the only reason that the fee was not included in the finance charge was that he forgot to include it. While this sort of error does not appear to be of the same degree as the clerical errors recognized by the courts in *Hutchings*

*v. Beneficial Finance Company of Oregon*, 646 F.2d 389, 391 (9th Cir.1981) (misstatement of 10 cents), or *Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 418 (7th Cir.1980) (forms misaligned on typewriter obscuring the disclosure), the Court need not determine whether Knickerbocker's claimed error falls within the type of error envisioned within § 1640 because it is readily apparent that Knickerbocker maintained no procedures reasonably adapted to avoid the error. Ness stated in his deposition that neither he nor anyone in his office reviewed the disclosure to verify its accuracy. Likewise, Ronald West, president of Knickerbocker, stated in his deposition that Knickerbocker relied entirely upon the settlement attorney for the accuracy of the disclosure and employed no procedures of its own to check the accuracy of the disclosures. From the foregoing, it is clear to the Court that Knickerbocker maintained no procedures at all reasonably adapted to avoid the error made in its disclosure form. Hence, the Court finds that Knickerbocker may not avail itself of the "bona fide error" defense established by § 1640.

### V

■ Because the "bona fide error" defense is not available to Knickerbocker, Abel is entitled to rescind the loan transaction pursuant to § 1635 of TILA and § 226.23 of Regulation Z. Upon rescission, the security interest given by the obligor becomes void and the obligor is not liable for any finance or other charge. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(1). Within 20 days after receipt of the notice of rescission, the creditor must return any money given by the obligor under the transaction and must take any step necessary to reflect the termination of the security interest. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(2). Once the creditor performs these obligations, the obligor must tender any money or property it received to the creditor. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(3). If the creditor does not take possession of the obligor's tender within 20 days, the obligor may keep it without any further obligation to return it. *Id.*

On November 2, 1992, Abel advised Knickerbocker that she was exercising her right to rescind. Abel also requested that Knickerbocker terminate its security interest within 20 days and tendered $4,484.17 to Knickerbocker in proposed monthly payments of $100. However, Knickerbocker took no steps to terminate its security interest, honor Abel's rescission, or accept her tender. Abel asserts that Knickerbocker is liable for statutory damages and attorney's fees under § 1640(a) for its failure to honor Abel's rescission and its ensuing obligations under § 1635 and § 226.23. In pertinent part, § 1640(a) provides that

> any creditor who fails to comply with any requirement imposed under this part, including any requirement under § 1635 of this title, ... with respect to any person is liable to such person in an amount equal to the sum of ... twice the amount of any finance charge in connection with the transaction, ... except that the liability under this subparagraph shall not be less than $100 nor greater than $1000....

15 U.S.C. § 1640(a) and (a)(2)(A)(i). Because Knickerbocker took no steps to reflect the termination of its security interest within 20 days after receiving notice of Abel's rescission, or at least seek equitable relief before a court, Knickerbocker is liable for the maximum sum of $1,000 (as twice the finance charge would be $34,284.80). Furthermore, Knickerbocker is liable for reasonable attorney's fees and costs as determined by the Court. 15 U.S.C. § 1640(a)(3).

### VI

■ The remaining question before the Court is what tender, if any, is Abel required to make given that Knickerbocker never performed its obligations after Abel's rescission. Abel asserts that $4,484.17 in principal remains due. Knickerbocker has not disputed this figure. Initially, Knickerbocker contends that Abel is not entitled to enforcement of her rescission by the Court because she tendered less than a lump sum of the remaining amount of principal due. In support, Knickerbocker cites *Powers v. Sims and Levin*, 542 F.2d 1216 (4th Cir.1976), for the proposition that rescission will not be judicially enforced unless it is so conditioned to give the lender its legal due. Knickerbocker contends that Abel's proposed payment of the remaining principal in monthly payments does not give Knickerbocker its legal due.

In *Powers*, the court found that the obligors had refused to tender certain amounts lent to discharge earlier debts. *Id.* at 1218. Thus, *Powers* addressed failure to tender the full amount of principal at all and not whether a tender of the full amount may be offered in monthly payments. For several reasons the Court finds that it need not determine whether Abel's offer of tender on November 2, 1992, constituted a valid tender under § 1635 and § 226.23. First, because Knickerbocker never performed its obligations, Abel's duty to tender never arose. Thus, any faults in her tender offer hold no ill consequences for her entitlement to rescission. Second, the Court finds that under the exercise of its traditional equity powers it may condition Abel's right to rescind upon her tender of all of the remaining principal. Although authority exists for the proposition that a creditor's failure to perform its obligations after rescission excuses entirely the obligor's duty to tender, *see Gill v. Mid-Penn Consumer Discount Co.*, 671 F.Supp. 1021, 1026 (E.D.Pa.1987), the weight of authority—and the apparent rule in this Circuit—holds that the Court should condition the obligor's right to rescind upon its tender to the lender of the remaining principal. *See Powers*, 542 F.2d at 1221–22; *see also FDIC v. Hughes Development Co.*, 938 F.2d 889, 890 (8th Cir.1991) (affirming district court's discretion to condition right of rescission upon tender of loan principal within one year). Accordingly, the Court will enforce Abel's rescission of the loan transaction conditioned on her tender of the remaining principal of the loan.

### VII.

Under the exercise of the Court's equitable power, the Court will order Abel to pay the amount of $3,484.17, representing the amount of remaining principal offset by statutory damages of $1,000, at such time as she obtains the necessary funds, but in no event later than June 30, 1994. Knickerbocker is

directed to take any steps necessary to reflect the termination of the Deed of Trust on the residence located at 1813 East 33rd Street in Baltimore within 10 days of the payment of the amount set forth above. The Court suggests that it would be appropriate to arrange for the simultaneous exchange of the payment due and the requisite release. Lastly, Abel should submit, within 14 days, a proper affidavit supporting an award of reasonable attorney's fees and costs.