**Manuel F. EGIPCIACO RUIZ, et al., Plaintiff**

**v.**

**R & G FINANCIAL CORPORATION, et al., Defendant.**

**Civil No. 02–2829(JAG).**

United States District Court, D. Puerto Rico.

Aug. 19, 2005.

Manuel Suarez–Cobo, Suarez Cobo Law Office, San Juan, PR, for Plaintiffs.

Norberto Medina–Zurinaga, Quilichini, Oliver, Medina & Gorbea, Sonia B. Alfaro–De–La–Vega, Ramon Luis Nieves–Perez, R & G Financial Corporation, San Juan, PR, for Defendants.

Harold D. Vicente–Colon, Vicente & Cuebas, San Juan, PR, for Third Party Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On December 19, 2002, plaintiffs Manuel Egipciaco Ruiz and Betzaida Porrata Tirado (collectively "plaintiffs"), filed suit against R & G Financial Corporation, Inc. ("R & G"), seeking redress for violations to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f (Docket No. 1). On October 22, 2004, plaintiffs moved for partial summary judgment (Docket No. 48). On December 7, 2004, R & G opposed the motion and filed its own cross-motion for summary judgment (Docket No. 58). For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** plaintiffs' motion and **GRANTS in part** and **DENIES in part** R & G's cross-motion.

## FACTUAL BACKGROUND

On December 20, 1999, plaintiffs and Continental Mortgage Corp. ("Continental") entered into a loan transaction guaranteed by a mortgage on certain real estate. Continental is and was at all times material to this complaint a corporation engaged in the business of providing consumer loans guaranteed with real estate in Puerto Rico and was a creditor for TILA purposes. The mortgage was arranged by a mortgage broker named or doing business as BGP home mortgage. The mortgage was and is secured by plaintiffs' principal residence. Plaintiffs allege that Continental failed to include several charges as finance charges in the TILA disclosure given to them before consummation of the loan.

In 2000, R & G acquired the loan from Continental, becoming an assignee as defined in TILA. On November 21, 2002, plaintiffs sent notice to R & G that they wanted to rescind the loan and mortgage pursuant to 15 U.S.C. § 1635. R & G failed to act upon plaintiffs' notice of rescission. This action soon followed.

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the

ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

### B. *The Motions for Summary Judgment*

Plaintiffs move for summary judgment on defendant's liability arguing that, as disclosed at the time of consummation of the loan, the principal amount of the loan was overstated and in turn the finance charges understated and, thus, they are entitled to rescind the loan pursuant to TILA. R & G does not contest that the loan amount and finance charges were correctly disclosed,[1] but rather argues that plaintiffs are not entitled to rescission because they lack the capacity to return the loan amount.

### 1. *Finance Charges*

Plaintiffs argue that in the settlement statement they received at the loan consummation, several fees appear included within the amount financed when they should have appeared as financing charges. Specifically, plaintiffs argue that the "Loan Origination Fee", "Loan Discount", "Broker Fee", "Interest", and "Mortgage Insurance", which total $6,946.50, are in fact finance charges but were included in the principal amount of the loan. Accordingly, they claim that the amount of the loan was overstated as $66,500 and the finance charge understated as $127,846.37, when in reality the financed amount should have been disclosed as $59,553.50 and the finance charge as $134,792.87. Thus, they claim that they were misled because the finance charge, which is the cost of the loan, appeared lower than it actually was, infringing their ability to compare it with

---

**1.** In a footnote, R & G did state that it "contests all allegations made by plaintiffs as to disclosure or amount errors." (Docket No. 58 at 6, n. 2). Without an attempt at developed argumentation, however, the argument is considered waived. *See, e.g., U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990)(". . . issues adverted to in a perfunctory manner, unac-

companied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.")

offers from other institutions. R & G does not make an effort to argue otherwise.

■ Upon review of the definitions provided in TILA, 15 U.S.C. § 1605, and in Regulation Z, 12 C.F.R. § 226.4, it is evident that the contested fees do fall under the definition of a finance charge. Furthermore, although the statutes allow for a variance of a minimal amounts from the actual finance charge, *see* 15 U.S.C. § 1605(f) and 12 C.F.R. § 226.22(a), the amount at issue here is far greater than the amount allowed. Accordingly, the Court finds that it is apparent from the loan documents attached at exhibits that a material violation of TILA's disclosure requirements occurred due to the misstatement of the finance charge and the amount financed, triggering plaintiffs' right to rescind the transaction.

### 2. The Right of Rescission

Pursuant to TILA, 15 U.S.C. § 1635, and Regulation Z, 12 C.F.R. § 226.23, when a consumer exercises his right of rescission, he or she must notify the creditor in writing of the intention to rescind the transaction. Upon receipt of the notice of rescission, the creditor shall then have twenty days within which to "return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.23(d)(2). Once the creditor has complied with its obligation, "the consumer shall tender the money or property to the creditor . . . ." 12 C.F.R. § 226.23(d)(3). The order in which this procedure is effected, however, may be modified by the Court. *See* 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(4). It is just such a modification which R & G seeks from the Court.

R & G argues that the vast majority of courts faced with the issue have conditioned the right of rescission upon the consumer's tender of the amount borrowed when the consumer's ability to tender has been questioned as, for example, when the consumer has entered into bankruptcy proceedings. *See, e.g., FDIC v. Hughes Development Co.*, 938 F.2d 889, 890 (8th Cir.1991); *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 254 (6th Cir.1980); *La Grone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1976); *Powers v. Sims and Levin*, 542 F.2d 1216, 1221–22 (4th Cir.1976); *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir.1974); *Bustamante v. First Federal Savings & Loan Association*, 619 F.2d 360, 365 (5th Cir.1980); *Abel v. Knickerbocker Realty Co.*, 846 F.Supp. 445, 450 (D.Md.1994); *Mayfield v. Vanguard Sav. & Loan Assoc.*, 710 F.Supp. 143 (E.D.Pa.1989); *Amresco v. First Hawaii Title Corporation*, 101 F.Supp.2d 1326 (D.Haw.1999). Only a scarce number of courts have declined to condition the right of rescission to the consumer's tender of the loan amount. *See, e.g., In re Celona*, 90 B.R. 104 (Bkrtcy.E.D.Pa.1998); *In re Piercy*, 18 B.R. 1004 (Bkrtcy.W.D.Ky.1982).

R & G further argues that when plaintiffs filed for bankruptcy proceedings, they had consistently missed numerous payments on the mortgage at issue. Furthermore, plaintiffs stated in the bankruptcy petition that their payment capacity was of only $150 per month after liabilities. Nonetheless, R & G avers that plaintiffs defaulted on several occasions on their bankruptcy plan payments. Thus, R & G fears that if its security interest over plaintiffs' residence is voided, it will not be able to recover the loan amount. This fear seems to be well-founded, since, in addition to the missed payments, plaintiffs stated on the rescission notice that they had filed for bankruptcy and intended to treat the loan as an unsecured claim in the bank-

ruptcy proceedings. (*See* Docket No. 48, Exh. 5 at p. 2).

■ In this case, the equities dictate a modification of the rescission procedure. The Court finds that the text of § 1635 and Regulation Z as well as the majority of decisions on this issue allow it to modify the rescission procedure. Accordingly, although plaintiffs do have the right to rescind the loan transaction as discussed above, and they properly exercised that right by timely giving written notice to R & G, rescission will be conditioned upon their tender to R & G of the amount of the loan, that is $59,553.50.[2] Because it seems that the plaintiffs might be unable to tender the full amount of the loan, then R & G shall, within twenty days from the issuance of this opinion, submit a report for the Court's consideration detailing all the payments it has received and has credited to plaintiffs' loan. This amount shall be deducted from the amount of the loan and the remainder will be what plaintiffs are obliged to tender before they can rescind the loan transaction. Once tender is made, R & G shall proceed to terminate its security interest over the property. Needless to say, if this modified procedure is followed, R & G will not have to return any monies to the plaintiffs as called for in TILA, 15 U.S.C. § 1635(b), and Regulation Z, 12 C.F.R. § 226.23(d)(2).

### 3. Damages

■ Section 1640 allows damages actions to be brought against "any creditor who fails to comply with any requirement imposed under [TILA], including any requirement under section 1635...." Such a creditor can generally be held liable for actual damages suffered, a statutory penalty equal to twice the finance charge (with a minimum penalty of $200 and a maximum penalty of $2,000), and attorney's fees and costs.

*Belini v. Washington Mutual Bank*, 412 F.3d 17, 24 (1st Cir.2005)(*quoting* 15 U.S.C. § 1640(a)). If, once it receives the notice of rescission, the creditor fails to comply with its obligations under § 1635, then it "has generally violated a 'requirement' of section 1635 and can be held liable for damages under section 1640." *Id.* at 25. "The language in section 1640(a) unequivocally entitles a successful Truth-in-Lending plaintiff to an award of attorney's fees, and leaves only *the amount* of the award to the court's discretion." 918 F.2d 232, 233 (1st Cir.1990)(emphasis in the original).

Although R & G argues that plaintiffs are not entitled to damages in this case, it is rather clear that once a violation of TILA is found, the Court has little discretion to deny an award of damages and reasonable attorney's fees. *See Id.* Only the amount of the damages is left to the Court's discretion. The Court, however, is not in a position at this time to make such a determination. Accordingly, the case is hereby referred to a Magistrate–Judge for a hearing on damages and the issuance if a Report and Recommendation.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** plaintiffs' motion and **GRANTS in part** and **DENIES in part** R & G's cross-mo-

---

**2.** Plaintiffs argue that the tender amount should be $66,500 minus all the closing costs, lowering the amount to $57,457.52. The Court, however, is of the opinion that only those amounts which TILA and Regulation Z label as finance charges should be deducted.

"[B]oth the creditor's duty to refund and the customer's duty to tender back are within the literal reach of a 'modification,' which should be enough to permit monetary adjustments." Ralph J. Rohner & Fred H. Miller, *Truth in Lending* 653 (2000)(footnote omitted).

tion. R & G is ordered to file a report within twenty days detailing the payments received in connection with the loan at issue. The matter is hereby referred to a Magistrate–Judge for hearing on damages and the issuance of a Report and Recommendation.

IT IS SO ORDERED.