**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELSA ANCHONDO, on behalf of
herself and all others similarly
situated,

        Plaintiff-Appellee,

v.

ANDERSON, CRENSHAW &
ASSOCIATES, L.L.C.,

        Defendant-Appellant.

No. 10-2010

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 1:08-CV-00202-RB-WPL)**

---

Submitted on the briefs:[*]

Steven R. Dunn, Dallas, Texas, for Defendant-Appellant.

Rob Treinen, Feferman, Warren & Treinen, P.A., Albuquerque, New Mexico,
O. Randolph Bragg, Horwitz, Horwitz & Associates, Chicago, Illinois, for
Plaintiff-Appellee.

---

Before **TACHA**, **HOLLOWAY**, and **ANDERSON**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

**ANDERSON**, Circuit Judge.

Defendant Anderson, Crenshaw & Associates, L.L.C. (ACA) appeals from a district court order awarding plaintiff Elsa Anchondo $63,333.52 in attorney fees, gross receipts tax, and costs under 15 U.S.C. § 1692k(a) after ACA agreed to a settlement in favor of Ms. Anchondo and the class she represents on their claims against ACA under the Fair Debt Collection Practices Act (FDCPA). ACA contends the district court erred in certain respects in determining the amount of the attorney fee award. We review the district court's award for an abuse of discretion, *see, e.g.*, *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995), and affirm for the reasons expressed below.

## I. District Court's Calculation of Fee Award

The district court arrived at its fee award by methodically proceeding through a calculation of the lodestar amount pursuant to *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and relevant Tenth Circuit precedent applying *Hensley*. The lodestar, of course, is the "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *id.* at 433, which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances, *Perdue v. Kenny A. ex rel. Winn,* 130 S. Ct. 1662, 1673 (2010).

After summarizing the substantively straightforward but procedurally somewhat complicated litigation[1]–which led, after some fourteen months, to a favorable settlement of the underlying FDCPA claims–the district court began its lodestar analysis by determining the proper hourly rate for the two lawyers who served as co-counsel for Ms. Anchondo and the plaintiff class. The court looked to prevailing market rates in the New Mexico community for attorneys of their experience and found $195 per hour reasonable for local counsel Rob Treinen and $300 per hour reasonable for national FDCPA class action specialist O. Randolph Bragg.[2] *See* Memorandum Opinion and Order at 4-5 (Dec. 16, 2009).

The court then turned to the number of hours expended. Mr. Treinen and Mr. Bragg each submitted extensive billing records in support of the hours they claimed to have worked on the case. *See* Aplt. App. at 35-56 (seven-page declaration and fifteen-page billing record for Mr. Treinen), 58-89 (eighteen-page declaration and eleven-page billing record for Mr. Bragg). The district court

---

[1]    Among other things, ACA asserted a counterclaim for declaratory relief, filed a motion to dismiss on the merits and on Due Process and First Amendment challenges to the FDCPA, and opposed discovery so as to require plaintiff to file a (partially successful) motion to compel.

[2]    Mr. Bragg sought compensation at an hourly rate of $465, which he has received in FDCPA litigation elsewhere. *See, e.g.*, *Silva v. Patenaude & Felix, P.C.*, No. C 08-03019 JW, 2010 WL 2000523, at *2 (N. D. Cal. May 12, 2010); *Palmer v. Far West Collection Servs., Inc*, No. C-04-03027 RMW, 2008 WL 5397140, at *1 (N.D. Cal. Dec. 18, 2008). But the district court held that prevailing New Mexico rates should apply in this case pursuant to *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006), and reduced Mr. Bragg's rate by $165 per hour. Mr. Bragg has not challenged this reduction by cross appeal.

"reviewed carefully the detailed billing records," concluded they "demonstrate that counsel exercised appropriate billing judgment and avoided duplicative efforts," and found "the number of hours expended on this litigation is reasonable." Memorandum Opinion and Order at 6. The court further determined "neither an upward nor a downward adjustment of the lodestar amount is necessary under the circumstances of this case." *Id.* at 7.

## II. ACA's Objections to the Fee Award

ACA argues that the district court erred in its fee analysis by (1) failing to explicitly address the *Johnson* factors[3]; (2) awarding fees to Mr. Bragg when his participation was unnecessary for the prosecution of the case; and (3) failing to reduce excessive hours claimed by both Mr. Treinen and Mr. Bragg. We take up these objections in order below.

---

[3] In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), the Fifth Circuit set out twelve factors relevant to the determination of a reasonable attorney fee: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Francia v. White*, 594 F.2d 778, 784 (10th Cir. 1979) (summarizing factors in appendix to opinion). While "not saying that all of these need be considered," this court "commend[ed] them to the trial court for its use in arriving at a fair and reasonable [fee]" in *Francia*, *id* at 782, and we have referred to them for guidance on various occasions since.

**A. Application of *Johnson* Factors**

ACA's objection regarding the *Johnson* factors is meritless. ACA concedes that "the Tenth Circuit has never held that a district court abuses its discretion by failing to specifically address each *Johnson* factor"–indeed, that we expressly held to the contrary in *Gudenkauf v. Stauffer Communications, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998). Aplt. Opening Br. at 13. Yet ACA goes on to assert that "[a] failure to consider the *Johnson* factors constitutes an abuse of discretion," *id.* at 16 (citing an unpublished decision from the Southern District of Texas), and insists we reverse the fee award here because "the *Johnson* factors . . . were not discussed by the district court," *id.* No particularized argument, tying specific *Johnson* factors to specific circumstances, is offered to lend concrete substance to this conclusory objection. Absent such argument–which it is not appropriate for this court to develop on ACA's behalf–we decline to look behind the district court's affirmation that it carefully reviewed the relevant materials and determined that the hours counsel recorded were reasonable.[4] ACA's perfunctory complaint about undiscussed *Johnson* factors is an insufficient basis upon which to disturb the district court's lodestar fee determination, to which we must defer absent the demonstration of an abuse of discretion.

---

[4]     Of course, to the extent ACA advances specific, record-based arguments in connection with other objections it raises on appeal, we consider those in the corresponding sections of our decision.

The Supreme Court's very recent decision in *Perdue* only confirms our reluctance to disturb a presumptively valid lodestar fee determination on the basis of a conclusory objection that *Johnson* factors were not discussed. In *Perdue* the Court appears to significantly marginalize the twelve-factor *Johnson* analysis, which it discounts as just "[o]ne possible method" that "gave very little actual guidance" and, due to its "series of sometimes subjective factors[,] . . . produced disparate results." 130 S. Ct. at 1671-72 (quotation omitted). The *Perdue* Court clearly embraces the lodestar approach as the preferable alternative to the *Johnson* analysis, noting that the lodestar approach "achieved dominance in the federal courts after . . . *Hensley, Gisbrecht v. Barnhart*, 535 U.S. 789, 801 . . . (2002)," and has "become the guiding light of our fee-shifting jurisprudence." 130 S. Ct. at 1672 (also noting that "unlike the *Johnson* approach, the lodestar calculation is objective" and hence "produces reasonably predictable results") (quotations omitted). We do not suggest that the *Johnson* factors have become irrelevant; *Perdue* did not overrule *Hensley's* allowance that under appropriate circumstances they may be useful in determining subsequent ad hoc adjustments to the lodestar,[5] *see Hensley*, 461 U.S. at 434 & n.9 (also noting, however, "that many of [the *Johnson*] factors usually are [already] subsumed within the initial

---

[5]    In this regard we note that a factor recognized by *Hensley* to be of unique importance in particular cases–where a prevailing party has achieved only limited success, *see* 461 U.S. at 434–is not a concern here.

-6-

calculation of hours reasonably expended at a reasonable hourly rate"). But, after *Perdue*, it has only become clearer that the lodestar determination is primary and that the propriety of such a determination is not automatically called into doubt merely because the trial court did not expressly discuss the *Johnson* factors.

**B. Objection to Participation of Mr. Bragg**

ACA argues that the district court erred in awarding *any* fee for Mr. Bragg, because Mr. Treinen and his firm, particularly a senior partner in the firm, could have handled the case adequately without Mr. Bragg's added experience. This unusual position–basically asserting that highly experienced, nationally prominent lawyers may not work (at least for compensation) on any but the most demanding cases, and even then may not act as co-counsel if another attorney with arguably commensurate experience is available from co-counsel's firm–is not supported by a single on-point authority, and we decline to adopt it here. We emphasize that this is not a case of compensating an expert attorney at a rate unsustainable in the local legal community; as noted earlier, the district court substantially reduced Mr. Bragg's hourly rate to bring it in line with the New Mexico market.

ACA seeks to bolster its argument by insisting that plaintiff's counsel's position in the underlying litigation, where they asserted that the facts and law plainly supported their FDCPA case, demonstrates that the participation of a national FDCPA expert was unnecessary. Of course, ACA's own litigation position hardly conceded such a straightforwardly meritorious case to plaintiff.

To focus on such assertions–the standard rhetoric of adversarial legal argument–is to be distracted from the real point. Ultimately, the trial court must decide for itself whether an action was so simple as to undercut a subsequent fee request, and its uniquely informed on-the-spot judgment is owed much deference by an appellate court, *see, e.g.*, *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (citing cases expressing in various ways trial court's superior vantage for determining reasonable fee to which appellate court must defer). We are not persuaded that the district court abused its discretion in declining to categorically strike all compensation for Mr. Bragg. Of course, that does not mean Mr. Bragg was necessarily entitled to compensation for all of the hours recorded in his billing records; to the extent ACA objects to particular hours as excessive or redundant, we consider its objections in the next section below.

## C.  Particular Objections to Hours Claimed

ACA advances several objections to hours claimed by Mr. Bragg. First, it contends that the twelve hours he spent working on plaintiff's (successful) motion to dismiss one of ACA's counterclaims should have been struck. Picking up on its prior theme, ACA insists this work could have been done by a less experienced attorney. But, again, ACA does not cite any authority holding that an experienced attorney must work for free whenever the task at hand might not call for the full measure of his expertise (assuming ACA's factual premise here). ACA notes that the motion focused on a single counterclaim, as if that made it too insignificant to

warrant Mr. Bragg's attention. But, as the record shows, the narrowed focus of the motion was a thoughtful strategic choice, which is part of what an experienced practitioner brings to a legal team. It effectively thwarted an oblique attack by ACA on the merits of plaintiff's FDCPA action in the guise of a counterclaim for a declaratory judgment on a critical element of the case (whether ACA's conduct constituted a "communication" implicating FDCPA protection). ACA also refers here, in conclusory fashion, to the rule that duplicative work is not compensable, citing *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). But that very case explains "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* Counsel's billing records do not suggest any violation of this commonsense principle in connection with the preparation of the motion to dismiss.[6] We cannot say the district court abused its discretion in compensating Mr. Bragg for his professional efforts in this regard.

ACA next complains of the 3.7 hours Mr. Bragg billed for communicating with Mr. Treinen regarding all aspects of the case over its fourteen-month

---

[6]    Indeed, these records reflect efficient cooperation, rather than redundancy, between Mr. Treinen and Mr. Bragg throughout their collaboration on the case. We emphasize this point to avoid giving any impression that our decision here constitutes an indiscriminate endorsement of multiplicitous representation.

duration. ACA again suggests that Mr. Bragg should be denied compensation for time not tied to an aspect of the case demanding his special expertise. We have already rejected this basic point in other contexts, and it is no more persuasive here than elsewhere. ACA also appears to contend that Mr. Bragg may not charge for communications with co-counsel, citing *Steffens v. Steffens*, No. 99-1253, 2000 WL 702390, at \*6 (10th Cir. May 26, 2000) (unpub.), as authority for cutting fees for time spent in intra-office and inter-office conferencing. Of course, the unpublished *Steffens* case is not binding on this panel, but we note that it did not hold that conferencing with co-counsel is uncompensable. Rather, *Steffens* merely upheld an exclusion of "*excessive* time [billed] for [such] conferences." *Id.* (emphasis added). Similarly, in *Case* this court upheld a reduction in time claimed for conferencing, not because it was categorically improper, but because counsel's conclusory entries "did not show how much time was spent in or what happened at conference." *Case*, 157 F.3d at 1253. Here, billing records for conferencing with co-counsel were neither facially excessive as in *Steffens* nor conclusory as in *Case*.

ACA raises two objections to Mr. Bragg's participation in the settlement conference. ACA generally contends that his attendance was unnecessary, as Mr. Treinen was there to represent the interests of Ms. Anchondo and the plaintiff class. But this was no minor hearing; the entire FDCPA case (save fees and

-10-

costs) was resolved–quite favorably to plaintiff[7]–at the conference. It would have been a questionable judgment by Mr. Treinen *not* to ensure that Mr. Bragg was there in person to prepare and present the best case for settlement.

More specifically, ACA objects to compensating Mr. Bragg's travel time. It is not clear whether this objection goes beyond ACA's meritless challenge to Mr. Bragg's attendance at the conference per se, but even if it does, we reject it. We have recognized the compensability of necessary travel time, though a trial court has discretion to apply a reduced hourly rate if the time is otherwise unproductive.[8] *See Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990). Mr. Bragg recorded 5.8 and 5.6 hours of travel time to Albuquerque and back to Chicago, respectively. His records reflect that he reviewed the case while en route to the conference, but there is no entry for work on his return. Thus, at most ACA could have asked the district court to exercise its discretion to award a reduced fee for the return trip to Chicago. But ACA did not make such a request in its memorandum opposing plaintiff's fee application and we decline to hold

---

[7]    The settlement afforded compensation for class members, awarded additional compensation for plaintiff as representative, and granted injunctive relief to prevent ACA from engaging in the conduct that prompted the suit.

[8]    We note that the only authority cited by ACA in support of its challenge to Mr. Bragg's travel time, an unpublished district court decision out of California, *Johnson v. Credit Int'l, Inc.*, No. C-03-100 SC, 2005 WL 2401890, at *3 (N.D. Cal. July 28, 2005), was reversed on appeal on precisely this point, *see Johnson v. Credit Int'l, Inc.*, 257 F. App'x 8, 10 (9th Cir. 2007).

that the district court abused its discretion in not granting a potential reduction that was not presented for its consideration.

Finally, ACA complains about 3.9 hours attributed by Mr. Bragg to the review of various orders, emails, and letters, in thirty-nine entries of .1 hour per document. The vast majority of these documents, ACA asserts, were only one page. We fail to see an abuse of discretion in allowing an allotment of six minutes to the review of even single-page documents.[9]

Turning to Mr. Treinen, ACA first objects to the 9.8 hours he attributed to communication with Mr. Bragg during the fourteen-month course of proceedings below. On its face, a mere .7 hour per month in communication with co-counsel is not excessive. ACA insists that much time was expended on issues for which

_____

[9]     Once again ACA relies on the unpublished California district court decision in *Johnson*, *see supra* note 8, as its sole authority for challenging the billing practice involved here. Actually, *Johnson* appears to be concerned with something different:

> Mr. Bragg's custom was to itemize multiple activities that took place on the same day. Then, because his law firm rounds up to the nearest tenth of an hour, the result is that an activity such as preparing a fax of a document is billed for six minutes on top of preparing the document itself for 54 minutes. Putting aside the obvious question of why Mr. Bragg must prepare a fax at his hourly rate of $435 when he has a variety of assistants to call upon, this Court asks if Mr. Bragg could have perhaps prepared the document and the fax all in the same 54 minutes, without an additional six minute charge.

*Johnson*, 2005 WL 2401890, at *3 (record citation omitted). In any event, to the extent *Johnson* may be read to disallow the use of tenth-of-an-hour increments for tasks such as reviewing case documents, we need not and do not follow suit.

Mr. Bragg's special expertise was not necessary, but, once again, ACA cites no authority for its facially implausible premise that expert co-counsel cannot assist on a case-related matter unless that matter is uniquely addressed to his particular expertise. Nor has ACA identified any specific communications between Mr. Treinen and Mr. Bragg that were unnecessary in any broader sense.

ACA asserts in conclusory fashion that experienced counsel should have benefitted from work done in other cases, reducing the time required here, citing *Hagan v. MRS Associates, Inc.*, No. Civ. A. 99-3749, 2001 WL 531119, at *6 (E.D. La. May 15, 2001). This case is nothing like *Hagan*, where experienced counsel inexplicably billed 10.75 hours for preparing a short complaint. Here, in contrast, counsel billed a combined 2.4 hours for that task–clearly reflecting the benefit of their experience in similar cases. And the amount of time attributed by counsel to legal research overall in this case was about one-third what was billed in *Hagan*–again, reflecting the benefit of their relevant legal experience. ACA's line of attack here is not only completely unsubstantiated by any specific facts, but plainly belied by comparison with the very authority it cites.

ACA's brief culminates in a plea for a substantial across-the-board cut in counsel's compensable hours, with an associated complaint that it is unclear from the district court's reasoning whether it even considered this option. Actually, the reason there is no mention of an across-the-board reduction in the district court's decision is abundantly clear: the court had reviewed counsel's billing records,

-13-

concluded that they showed proper billing judgment, and found the hours expended to be reasonable. That determination, coupled with the court's prior calculation of appropriate hourly rates of compensation, provided a fully adequate basis for an appropriate fee award. In sum, ACA has failed to demonstrate that the district court abused its discretion in its fee award to plaintiff's counsel, which we therefore affirm.

## III. Plaintiff's Request for Appellate Fees

Plaintiff has requested an additional award of fees and costs expended on appeal in defending the district court's award, citing *Gallegos v. Stokes*, 593 F.2d 372, 376 (10th Cir. 1979). While *Gallegos* recognized a right to such appellate fees under the Truth in Lending Act (TLA) rather than the FDCPA, the operative fee-shifting provisions of the Acts are identical: "in the case of any successful action to enforce the foregoing liability [for violation of the TLA or FDCPA]" the plaintiff may recover "costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3) (TLA) and § 1692k(a)(3) (FDCPA). Thus, consistent with *Gallegos*, we hold that plaintiff is statutorily entitled to fees and costs for this appeal.[10] *See King v. Int'l Data Servs. (IDS)*,

---

[10] This statutory entitlement is not dependent upon our limited authority to order appellate sanctions under Fed. R. App. P. 38, with its requirement of a "separately filed motion or notice" as a procedural prerequisite to consideration of a fee award to sanction frivolous appeals, *see, e.g., Smith v. Kitchen*, 156 F.3d 1025, 1030 (10th Cir. 1997); *Peterson v. Saperstein*, 267 F. App'x 751, 755

(continued...)

-14-

100 F. App'x 681, 682 (9th Cir. 2004) (granting appellate fees and costs under FDCPA because "[t]his circuit has interpreted the same statutory language to allow for attorney's fees and costs on appeal in the [TLA]"); *see also Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 450 (6th Cir. 2009) (holding FDCPA plaintiff awarded fees by district court "is entitled to attorney's fees incurred in defending the award on this appeal"); *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 44 (5th Cir. 2008) (holding plaintiff who defended favorable FDCPA judgment on appeal was entitled to appellate fees). We remand the matter to the district court to determine an appropriate amount. *See Whittington v. Nordam Group Inc.*, 429 F.3d 986, 1002 (10th Cir. 2005).

The judgment of the district court is AFFIRMED. Plaintiff's request for an award of fees and costs on appeal is GRANTED and the matter is REMANDED for determination of an appropriate amount.

---

[10](...continued)
(10th Cir. 2008), *cert. denied*, 129 S. Ct. 913 (2009). When appellate fees are independently legally authorized, we have regularly considered requests in appellate briefs sufficient to place the matter before us. *See, e.g.*, *Harsco Corp. v. Renner*, 475 F.3d 1179, 1191 (10th Cir. 2007); *Wyo. Wildlife Fed'n v. United States*, 792 F.2d 981, 986 (10th Cir. 1986); *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1527 (10th Cir. 1984), *aff'd*, 472 U.S. 585 (1985). Thus, the request included in plaintiff's brief, *see* Appellee's Answer Br. at 20, sufficed for that purpose here.